IN the MATTER OF the PROTECTIVE
PLACEMENT OF J.S., a person over the age
of 18 and adjudicated incompetent: J.S., by
the Guardians of his person and property, J.
and V.S., Plaintiff-Respondent,

v.

The State of Wisconsin: The DEPARTMENT OF
HEALTH, Linda Reivitz, in her official
capacity as Secretary of the Department of
Health & Social Services, Defendants-
Respondents,

BROWN COUNTY, The Brown County Board of
Supervisors, Donald Holloway, the Brown
County Executive in his official capacity, The
Brown County Unified Board, William C.
Daumueller, Program Director of the Unified
Board in his official capacity, Defendants-
Appellants.

Court of Appeals

*No. 87–1526. Submitted on briefs February 9, 1988.—Decided
March 10, 1988.*

(Also reported in 425 N.W.2d 15.)

670

For the defendants-appellants the cause was submitted on the briefs of *Kenneth J. Bukowski,* corporation counsel, and *John C. Jacques,* assistant corporation counsel.

For the plaintiff-respondent the cause was submitted on the brief of *Roy Froemming* and *The Wisconsin Coalition for Advocacy,* of Madison, and *Peter McKeever* and *Legal Services of N.E. Wisconsin,* of Green Bay.

For the defendants-respondents the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Robert D. Repasky,* assistant attorney general.

Before Gartzke, P.J., Dykman, and Eich, JJ.

EICH, J.   Brown County and several of its agencies and officials appeal from an order awarding the guardians of J.S., a developmentally disabled adult, attorney fees and costs incurred in their suit to place J.S. in a community-based residential facility in Brown County. The issue is whether J.S. was (a) a patient of Brown County who (b) prevailed in an action (c) to enjoin the county's unlawful violation of

his rights within the meaning of sec. 51.61(7)(c), Stats.,[1] so as to entitle his guardians to recover the costs and reasonable attorney fees in the action. We answer the question in the affirmative and affirm the order.

J.S., a resident of Brown County, had been placed at the Central Wisconsin Center for the Developmentally Disabled (CWC) through the Brown County Unified Board, an entity established under secs. 51.42 and 51.437, Stats., to provide for the needs of developmentally disabled residents of the county. In 1985, J.S.'s guardians commenced an action against the county and the state department of health and social services claiming that placement at CWC was more restrictive than appropriate for J.S.'s condition and was antithetical to his development. They sought injunctive and declaratory relief in the form of a judgment requiring the defendants to develop and maintain a community-based treatment program appropriate to J.S.'s condition and needs. They alleged that, by requiring J.S.'s continued placement at CWC, and by failing to develop appropriate community placement facilities in Brown County, the defendants violated J.S.'s rights to care, treatment, rehabilitation, and educational services in the least restrictive placement appropriate to his condition, as provided in chs. 51 and 55, Stats.

The trial court ruled in J.S.'s favor, holding that he had a right to placement in a four-person commu-

---

[1]Section 51.61(7)(c), Stats., provides that "[a]ny patient whose rights are protected under this section may bring an action to enjoin the unlawful violation or denial of rights under this section and may in the same action seek damages as provided in this section. The individual may also recover costs and reasonable actual attorney fees if he or she prevails."

nity-based residential facility and that the county had the primary responsibility to provide funds and facilities for such placement. The court ordered the county to provide an appropriate facility. The county appealed, and J.S. died while the appeal was pending. The county then moved for summary reversal and asked us to vacate the trial court's order. We denied the motion and dismissed the appeal as moot. *In the Matter of J.S.,* Nos. 86–0723, 86–1170 and 86–171 (Feb. 18, 1987).

The guardians then moved the trial court for an award of attorney fees under sec. 51.61(7)(c), Stats., claiming that J.S. had been a patient of Brown County, and that they had prevailed in their action against the county to enjoin the "unlawful violation or denial of [J.S.'s] rights." The court ruled that the guardians had proved their case under the statute and awarded them $30,930 as reasonable attorney fees, together with $907.05 costs. Other facts will be discussed below.

The county argues first that the statute authorizing recovery of fees and costs, sec. 51.61(7)(c), Stats., does not apply because J.S. was not its "patient," as that term is defined in sec. 51.61(1), the patients' rights laws. The county concedes that J.S. had been placed in a treatment facility under ch. 55, Stats., and that he was a "patient" within the meaning of sec. 51.61(1) and thus was entitled to the "least restrictive conditions" necessary to achieve the purposes of that placement under sec. 51.61(1)(e). It maintains, however, that, having been placed in a state facility, J.S. was the state's patient, not the county's.[2] Our reading of the applicable statutes convinces us otherwise.

---

[2]The guardians argue that, by reason of our dismissal of the appeal from the trial court's order, all matters determined in the

Section 51.42(1)(b), Stats., provides as follows:

> The county board of supervisors has the primary responsibility for the well-being, treatment and care of the ... developmentally disabled ... citizens residing within its county .... County liability for care and services purchased through or provided by a county department of community programs ... shall be based upon the client's county of residence ....

Section 51.437(4) contains similar provisions:

> (a) The county board of supervisors has the primary governmental responsibility for the well-being of those developmentally disabled citizens residing within its county ....
>
> (c) County liability for care and services purchased through or provided by a county department of developmental disabilities services ... shall be based upon the client's county of residence ....

Brown County has a unified board charged with all duties, rights and obligations under both secs. 51.42 and 51.437, Stats. Under sec. 51.22(1) persons such as J.S., who are committed under ch. 51, "shall

trial court's decision constitute "the law of the case" and may not be relitigated on this appeal. The issues which the guardians assert are so concluded are whether J.S. was a "patient" of the county within the meaning of sec. 51.61(1) and (7), Stats., and whether the county violated J.S.'s rights.

It is true that we denied the county's request to reverse and vacate the trial court's order, but that determination was not on the merits. Indeed, we ruled that the appeal had been mooted by J.S.'s death and dismissed it without reaching the merits. The trial court's decision and order of February 28, 1985, is not the law of the case.

be committed to the county department under s. 51.42 or 51.437 serving the person's county of residence, and such county department shall authorize placement of the person in an appropriate facility for care, custody and treatment ...."

Finally, secs. 51.42(3)(ar)4 and 51.42(4)(a)1, Stats., require the county board to appoint a governing and policymaking body, called a county community programs board, which, among other things, is required to do the following things:

> Within the limits of available state and federal funds and of county funds appropriated to match state funds, provide for the program needs of persons suffering from mental disabilities, including ... developmental disabilities ... by offering the following services:
>
> ....
>
> Inpatient and outpatient care and treatment, residential facilities ... and supportive transitional services.

Sec. 51.42(3)(ar)4.c. Under sec. 51.42(5)(c) counties are required to "[u]tilize available community resources and develop new resources necessary to carry out the purposes of this section."

The county argues that J.S., having been placed at CWC, a state facility, was a patient there, receiving care and treatment at that institution, and thus could not be considered a patient of the county. As a result, the county contends that the guardians did not make the threshold showing necessary to entitle them to recover fees and costs under sec. 51.61(7)(c), Stats. "Patient" is defined in sec. 51.61(1), the "patient's rights" law, as follows:

676

[A]ny individual who is receiving services for ... developmental disabilities ... including any individual who is admitted to a treatment facility in accordance with this chapter or ch. 55 ... or who is receiving care or treatment for such conditions through the department [of health and social services] or a county department under s. 51.42 or 51.437 ....

The county argues that J.S. was a state patient under the statutory definition, and the guardians contend that the definition establishes that J.S. was a patient of the county. We agree that the definition could lead to opposing conclusions and we consider it to be inconclusive. The definition serves a different purpose. It simply defines the term in a generic sense in order to determine the class of persons entitled to the rights delineated in the remainder of the section. No one disputes that J.S. was a "patient" within the meaning of sec. 51.61(1), Stats., and was thus possessed of all of the rights conferred by that section. The statute, however, is of no aid in determining whether the county, rather than the state or some other entity, is liable for the fees and costs recoverable by patients who successfully vindicate those rights in court. The question is not whether J.S. was a "patient" of the county or a "patient" of the state. It is whether recovery of fees against the county was proper. We believe that it was.

■
We have outlined the county's responsibilities for developmentally disabled residents such as J.S. They are extensive, if not pervasive. The state, through the department of health and social services, has other, different, responsibilities. It is, of course, responsible for the care and custody of those, like J.S., who are

committed or placed in its facilities. Secs. 55.001 and 55.06, Stats. It is responsible for funding, administering and monitoring county programs and for execution of the laws relating to mentally ill or deficient persons, as well as the statewide protective services program under ch. 55. Considering the statutory scheme as a whole, we conclude that Brown County was the entity primarily responsible for the determination of J.S.'s place of confinement, and thus the proper entity for the guardians to proceed against to complain of the inadequacy of the facilities, programs and treatment at the institution in which the county had placed him. It is up to the placing agency, here the county, to provide the least restrictive residential placement to which J.S. is entitled under sec. 51.61(1)(e), Stats. Whether he may be considered the county's or the state's patient in the generic sense is immaterial. The crux of the guardians' claim was not that J.S. was not living under the least restrictive conditions available at CWC. Rather, their action was grounded on the allegation that his continued residence at CWC was a failure to place him in the least restrictive facility.[3] The trial court determined, and

---

[3]The county also argues that it could not have been violating J.S.'s right to the least restrictive placement at any time because at all times material to the action there was a court order in effect placing him at CWC. The existence of the order, it is argued, absolutely bars any determination that the county violated anyone's rights. That order, on its face, was made "through [the] Brown County 51.437 Board." More importantly, we agree with the trial court that the primary responsibility for J.S.'s placement has been allocated to the county by statute.

The fact, as the county asserts, that the department of social services has the power under sec. 46.275(3r)(a)2, Stats., to relocate certain developmentally disabled persons who are receiving medi-

we agree, that, under the statutory scheme, it was Brown County, not the state, that violated J.S.'s right to placement under "the least restrictive conditions necessary to achieve the purposes of ... commitment or placement" guaranteed to him by sec. 51.61(1)(e).

The county next argues that the guardians did not "prevail" in their lawsuit, and thus failed to meet another criterion for relief under sec. 51.61(7)(c), Stats. The argument is based on J.S.'s death. The county asserts that while the trial court's order directed the county to create a new placement facility, the order "never became effective" because it was stayed during the initial appeal to this court, and J.S. died while the stay was still in effect. In support of its argument, the county refers to *Hensley v. Eckerhart,* 461 U.S. 424 (1983), which involved a request for attorney fees as the "prevailing" party in a case brought under the federal civil rights act. The court there noted that one is a prevailing party within the meaning of the act "if [he or she] succeed[s] on any significant issue in litigation which achieves some of the benefit ... sought in bringing suit." *Id.* at 433 (citation omitted). The county maintains that J.S.'s death precluded him from reaping any "benefit" from the action. We disagree.

In *Coalition for Basic Human Needs v. King,* 691 F.2d 597 (1st Cir. 1982), several welfare recipients sued state officials under the civil rights act to compel resumption of programs for which funding had been cut off by the legislature. The trial court denied the plaintiffs' request for a temporary restraining order,

cal assistance from state centers "into a community setting" does not abrogate or diminish the county's primary responsibility for its developmentally disabled residents under chs. 51 and 55, Stats.

but granted an injunction requiring resumption of the funding pending plaintiffs' appeal of the denial. Before the injunction took effect, however, the legislature passed a new state budget that mooted the controversy. The trial court denied the plaintiffs' request for attorney fees on grounds that they did not "prevail" in the action. The court of appeals reversed, concluding that:

> The requirement that the legal success "achieve some of the benefit that parties sought" merely distinguishing cases in which plaintiffs obtain some substantive relief from those in which the "victories" are purely procedural. ...

> Of course, an intervening event may have made it unnecessary or impossible for the defendant to deliver that to which the plaintiff is legally entitled. ... But there is no reason why these sorts of fortuitous occurrences ought, in and of themselves, to deprive lawyers who win a civil rights suit of the fees to which they would otherwise be entitled. ... A party, in other words, prevails in a law suit when he [or she] establishes a legal *entitlement* to what he [or she] seeks, not when what he [or she] seeks is actually delivered.

*Id.* at 600 (emphasis in original; citations omitted). *See also Bishop v. Committee on Professional Ethics, Etc.,* 686 F.2d 1278, 1290 (8th Cir. 1982) (dismissal of appeal on grounds of mootness does not preclude award of attorney fees under civil rights act).

■ There can be no doubt that the guardians prevailed in that they "succeed[ed] on [a] significant issue in litigation." *Hensley,* 461 U.S. at 433 (citation omitted). The complaint alleged that the county's

actions had denied J.S. the statutory right to be placed in a less restrictive environment than that available at CWC. The guardians sought, among other things, a permanent injunction compelling the county to develop and maintain a community-based program. The trial court agreed and ordered the county to provide J.S. with such a placement. The fact that, after entry of the trial court's order granting the relief sought in the complaint, J.S. died before the order could be enforced does not bar recovery of fees and costs under sec. 51.61(7)(c), Stats., on the theory, advanced by the county, that a dead person cannot reap any "benefit" from a judgment granted, but yet to be enforced, at the time of of his or her death. The obvious purpose of the statute, like that of the civil rights act, is to reimburse those who bring actions to vindicate their rights and win them. *Coalition for Basic Human Needs,* 691 F.2d at 602. That is what the guardians' action on J.S.'s behalf sought to do, and they were successful. J.S. thus had the benefit of obtaining a court order vindicating his rights. The costs and fees were incurred prior to his death, and the county has not shown why the plain terms of the statute do not entitle the guardians to their costs and fees.

The county also contends that the relief granted by the trial court was declaratory only, and cites *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 746, 351 N.W.2d 156, 168 (1984), for the proposition that attorney fees are not recoverable in declaratory judgment actions. That case dealt with a specific statute allowing the recovery of costs—with no mention of attorney fees—in declaratory judgment actions, and the court declined to expand the word "costs" to include attorney fees in the absence of

express authorization by the legislature. The case is inapposite, for sec. 51.61(7)(c), Stats., specifically authorizes recovery of attorney fees by the prevailing party. In any event, the language of the court's final order makes it plain that the relief granted was injunctive, not merely declaratory: "IT IS ORDERED THAT: J.S. be placed within 8 months of the date of this order, in a community based residential facility in Brown County, Wisconsin, consisting of no more than four residents."

Finally, the county argues that the trial court improperly "apportioned" 100 percent of the attorney fees to the county because the guardians also prevailed against the state, the other defendant in the action, when the trial court entered a preliminary injunction against the state by stipulation of the parties. The argument is that "[i]t was plain and clear error for the Trial Court to grant injunctive relief as against the State defendants and yet impose the financial burden ... upon the Brown County defendants." Here, too, we consider cases decided under the attorney fees provisions of the civil rights act to be persuasive. Under those cases, when a matter continues to final adjudication, determinations of a preliminary nature do not result in a party's "prevailing" within the meaning of the provisions of the law authorizing recovery of fees and costs. *Hanrahan v. Hampton,* 446 U.S. 754, 756–57, *reh. denied,* 448 U.S. 913 (1980); *Smith v. University of North Carolina,* 632 F.2d 316, 346–47 (4th Cir. 1980).

It does not appear, however, that any injunction was entered by the trial court. The record contains only a stipulation between the guardians and the state indicating that the guardians' motion for a temporary

injunction was withdrawn, and that the state, in return for that, and "in order to give Brown County time to comply with what the state defendants perceive is Brown County's obligation to develop and fund a community placement for the plaintiff," agreed to provide certain services for J.S. at CWC. The stipulation was approved by the court. We do not see this as in any way indicating that the guardians "prevailed" against the state in the action. The court's final order is directed solely against Brown County, and it orders the county to provide the facilities for J.S.'s care and treatment that were requested in the complaint. The trial court correctly determined that the fees were chargeable against the county, the party the guardians prevailed against in the action.

*By the Court.*—Order affirmed.