# Gordon LYNCH, Plaintiff-Appellant-Cross-Respondent,

v.

# CROSSROADS COUNSELING CENTER, INC., Defendant-Respondent-Cross-Appellant.

Court of Appeals

*No. 03–1344. Submitted on briefs February 11, 2004.—Decided May 27, 2004.*

## 2004 WI App 114

(Also reported in 684 N.W.2d 141.)

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Aaron N. Halstead, Shneidman, Hawks & Ehlke, S.C.,* Madison.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the briefs of *Kenneth W. Forbeck, Forbeck, Elliott & Monahan, S.C.,* Beloit.

A nonparty brief was filed by *Barbara Zack Quindel* and *B. Michele Sumara, Perry, Shapiro, Quindel, Saks, Charlton, Sumara & Lerner, S.C.,* Milwaukee, for Wisconsin Employment Lawyers Association.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, J. In this wage claim action, Gordon Lynch, formerly employed by Crossroads Counseling Center, Inc., appeals the judgment awarding him unpaid wages and attorney fees insofar as the circuit court did not double a greater portion of the unpaid wages as a penalty and did not award all the attorney fees he requested. Crossroads cross-appeals, contending that the circuit court erred in granting summary judgment in favor of Lynch for unpaid wages and in denying its motion for reconsideration.

¶ 2. Taking the cross-appeal first, we conclude the circuit court correctly granted summary judgment in favor of Lynch for $9447.82 in unpaid wages and did not erroneously exercise its discretion in denying Crossroads' motion for reconsideration. On Lynch's appeal, we affirm the circuit court's decision not to impose a greater penalty under WIS. STAT. § 109.11(2) (2001–02).[1] However, with respect to the court's award of attorney fees under WIS. STAT. § 109.03(6), we conclude the circuit court erroneously exercised its discretion by not first determining a reasonable number of hours to expend on this case, which, when multiplied by the hourly fee the court found reasonable, should have been the starting point for the consideration of other factors. The court also erroneously exercised its discretion by calculating the fee as it apparently did based on Lynch's fee agreement, and by considering the amount recovered, in itself, to be a factor favoring reduction below a reasonable hourly rate for a reasonable number of hours. Accordingly, we affirm in part and reverse in part, remanding for a determination of reasonable attorney fees consistent with this opinion.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

## BACKGROUND

¶ 3. Lynch began employment with Crossroads in June 1995 as a psychotherapist. He and Crossroads entered into an employment agreement on that date, which provided for compensation as follows: $25 per billable therapy hour in the first year of employment; $30 per billable therapy hour in the second year; and $30 per billable therapy hour "or fifty-five percent of 'collections' (as defined in Addendum A), whichever is greater," in the third year and thereafter. Addendum A was attached and showed how wages were calculated under four variations in the number of hours worked: a sum consisting of the total hourly pay, vacation pay, holiday pay, FICA,[2] unemployment compensation, worker's compensation, and liability insurance was subtracted from 55% of collections, and the difference was the "overage" that the employee was due. Lynch and Crossroads signed a second agreement on January 8, 1996, that contained the same provision for compensation after three years of employment and also had the same Addendum A attached.

¶ 4. When Lynch began his employment with Crossroads, he performed alcohol and drug (AODA) counseling services. On September 24, 1997, Susan Schroeder, Crossroads' administrator, wrote Lynch to advise him that his last day of work in the AODA area would be October 1, 1997, and that effective October 2 he would be employed as a full-time mental health therapist pursuant to the agreement to be signed by the parties. On October 1, 1997, Crossroads and Lynch signed a third contract of employment. This agreement provided that in the third year of employment and

[2] Federal Insurance Contributions Act, 26 U.S.C. §§ 3101–3128 (2002).

thereafter, Crossroads was to pay Lynch $30 per billable therapy hour "or fifty-five [percent] (55%) of 'collections', whichever is greater." There was no reference to Addendum A and Addendum A was not attached to the agreement. This agreement also provided, as had the first two, that at full-time status after one year of employment, Crossroads would pay Lynch twenty hours annually for vacation at his then current hourly rate and for seven holidays, four hours for each, at his then current rate, commencing from the first day of employment.

¶ 5. In April 1999, Lynch and five other Crossroads employees filed a complaint with the Wisconsin Equal Rights Division of the Department of Workforce Development (DWD), alleging that Crossroads had unlawfully deducted the following items from their wages: vacation pay, holiday pay, unemployment insurance taxes, worker's compensation premiums, liability insurance, and the employer's portion of FICA taxes. The director of the Labor Standards Bureau determined that, according to Addendum A, the employer could compute 55% of collections by first deducting those items from the collections. However, after Lynch brought to the attention of the bureau that his 1997 contract did not contain a reference to Addendum A, the bureau director issued a decision in May 2000 concluding that Lynch's 1997 contract did not authorize Crossroads to make any deductions in computing 55% of collections. The decision ordered Crossroads to submit an accounting from June 27, 1997, through the end of Lynch's employment of the amounts paid to Lynch and the amounts he earned based on a full 55% of collections and to submit any underpaid amount with the accounting. Crossroads submitted an accounting showing the amounts Lynch would be paid if "he was to

receive 55% of collections from services rendered . . . minus monies already paid to him under [Addendum A]." This accounting added sums for FICA, unemployment insurance taxes, worker's compensation, and liability insurance under columns labeled 1997, 1998, and 1999 for a total of $4218.05. However, Crossroads did not submit that payment.

¶ 6. Lynch also filed a complaint with the DWD Unemployment Insurance Division asserting that Crossroads had impermissibly deducted unemployment insurance from his wages during 1997 and 1998. On December 15, 2000, the division issued an initial determination ordering Crossroads to pay Lynch the unemployment insurance taxes it had deducted from his wages during 1997 and 1998, concluding that the deductions were in violation of WIS. STAT. § 108.11(1). On January 17, 2001, the unemployment insurance division notified Lynch that Crossroads did not appeal that determination and it had become final, but that the division did not have the authority to enforce the initial determination.[3]

¶ 7. Lynch filed a third complaint with the DWD Worker's Compensation Division. On February 2001, an administrative law judge determined that Crossroads

---

[3] One of the documents attached to Crossroads' counsel's affidavit in support of its motion for reconsideration was a copy of a letter dated December 27, 2000, from counsel to the unemployment insurance division appealing the initial determination. Counsel avers that, "for whatever reason, [the agency] did not properly process the appeal." As we explain later, the circuit court declined to consider documents that were not timely filed according to the summary judgment schedule. In any event, nothing in the record suggests that the unemployment insurance division ever issued a document concerning Lynch after the January 17, 2000 notification.

had violated WIS. STAT. § 102.16(3) because it indirectly deducted the cost of worker's compensation benefits from Lynch's wages. It ordered Crossroads to pay Lynch the stipulated amount of worker's compensation premiums, less 20% for attorney fees.

¶ 8. Lynch filed this action in March 2001 after not having received any of the payments ordered in the above decisions. The complaint alleged that Crossroads had failed to make the payments ordered and that Crossroads had violated his 1997 contract by deducting from his wages its share of federally required FICA withholdings, its contributions to the Wisconsin Unemployment Reserve Fund, monies used to discharge its liabilities under the worker's compensation statute, corporate liability insurance purchased by Crossroads, and vacation and holiday pay owed separately to Lynch by Crossroads under the agreement. Lynch sought the unpaid wages due him, an equal amount as a penalty under WIS. STAT. § 109.11(2)(b), and attorney fees and costs under WIS. STAT. § 109.03(6). Crossroads' answer admitted that it made the deductions alleged but asserted that the deductions were permitted under Addendum A to the contract.

¶ 9. Lynch moved for summary judgment. In addition to seeking the sums alleged in the complaint, he asserted that he was owed wages for mental health therapy services rendered to patients insured by Compcare Health Services Insurance Corporation for which Crossroads paid him less than the $30 per hour required by the contract. According to Lynch's computations, the total owed before the penalty was $9447.82. In support of his motion, he submitted his affidavit with various attachments as well as his deposition,

Schroeder's deposition, and the deposition of James Tullis, Crossroads' controller.

¶ 10. Crossroads opposed the motion for summary judgment, arguing that it was entitled to a trial on three primary issues. First, Crossroads asserted that, although Addendum A was not mentioned in the 1997 contract or attached to it, this was the result of an inadvertent computer crash or mistyping, and thus there was a factual dispute over the proper construction of the contract on this point. Second, Crossroads agreed that Lynch had not been compensated at $30 an hour for Compcare patients, but asserted that the contract did not include these patients within the $30 per hour rate, and the proper construction on this point was also a factual dispute. Third, there was a factual dispute on whether holiday time and vacation time were deducted. On this last point, Crossroads acknowledged that it had admitted in its answer that these were deducted, but it submitted Tullis's affidavit. Tullis averred that holidays and vacation time were not deducted when computing Lynch's right to "overage" under Addendum A (that is, the difference between what they had received and what they were due under Addendum A), but simply "were made a part of his total compensation package and appeared . . . on his W-2 form." Crossroads also contended that Lynch was not entitled to a penalty in an amount equal to the wage deductions under Wis. Stat. § 109.11(2)(b) because it had acted in good faith in calculating and paying Lynch's wages.

¶ 11. The circuit court concluded that there was no disputed issue of fact with respect to the proper construction of the 1997 contract. It concluded that the language of the contract was plain and did not allow for any deductions from collections when computing the 55%, and Crossroads' submissions did not create a

genuine issue on whether the parties had intended that Addendum A be a part of the contract. It was undisputed, the court concluded, that Crossroads had deducted unemployment compensation, worker's compensation, FICA, and liability insurance from Lynch's wages in the total amount of $4218.05. The court also concluded that the plain language of the contract did not provide an hourly rate other than $30 an hour for Compcare patients, as it did for Medical Assistance patients,[4] and therefore it was undisputed that Crossroads owed Lynch $2109.77 for these patients.

¶ 12. With respect to holiday and vacation pay, the court concluded the contract plainly obligated Crossroads to pay Lynch the amounts specified. The court also concluded there was no issue of fact that Lynch had not been paid those amounts. Because Tullis's affidavit on this point was in direct conflict with his own deposition testimony as well as the answer to the complaint, the court stated that it was required to disregard it under *Yahnke v. Carson*, 2000 WI 74, ¶¶ 20–21, 236 Wis. 2d 257, 613 N.W.2d 102 (an affidavit that directly contradicts prior deposition testimony is generally insufficient to create a genuine issue of fact for trial, unless the contradiction is adequately explained).

¶ 13. The circuit court agreed with Lynch that a penalty equal to the amount due was appropriate for unemployment compensation and worker's compensation: the administrative decisions had determined those amounts were owed and Crossroads' resistance to those orders was not in good faith. The court therefore awarded $514.64 as a penalty. However, the court

---

[4] All the contracts Lynch signed had a $15 per hour billable rate for Medical Assistance patients.

decided not to impose a penalty for any other amounts owed Lynch because, it concluded, Crossroads had a reasonable basis for its positions on the proper construction of the contract and its liability for the wage claim.

¶ 14. Crossroads moved for reconsideration. It submitted the affidavit of its counsel, which contained legal conclusions as well as factual statements and referred to a number of attachments, some of them not previously submitted. The court denied the motion for these reasons: (1) the affidavit did not meet the requirements of WIS. STAT. § 802.08(3) because it contained conclusions of law, and because it made factual assertions and attached documents with no showing of counsel's personal knowledge; (2) some of the documents were efforts to dispute admissions Crossroads made in its answer, and the court had already ruled Crossroads could not contradict those admissions; and (3) the new documents were improper attempts to supplement the record after the deadline for summary judgment submissions.

¶ 15. Lynch moved for attorney fees and costs under WIS. STAT. § 109.03(6), requesting $14,325 in fees and $353.31 in costs. In Lynch's counsel's affidavit accompanying the motion, he averred he had spent 61.4 hours and his law clerk had spent 8.5 hours on this action, and he provided an itemization for the work performed on each day since November 30, 2000. He attached a copy of the fee agreement Lynch had signed and averred that Lynch had not paid him for any work itemized. The affidavit also provided details on counsel's professional experience and averred that $225 per hour was the rate he charged clients who retained him on an hourly basis in employment matters, and in his professional opinion this was a reasonable hourly

rate.[5] Lynch also submitted affidavits of two attorneys who averred that they had experience in employment law, that in their opinion the work Lynch's counsel performed was necessary, and that the hourly fee of $225 was reasonable for attorneys in this area performing this kind of work.

¶ 16. The court determined that it was appropriate to award fees under Wis. Stat. § 109.03(6). Based on the submissions, it found that $225 was a reasonable hourly fee. The court then listed the factors in SCR 20:1.5(1)(a). This rule is directed to attorneys' professional obligation to charge reasonable fees. After applying these factors, the court awarded $6641.58 in attorney fees and costs.

## CROSS-APPEAL

¶ 17. We first address Crossroads' cross-appeal. Crossroads contends the court erred in granting summary judgment because there were disputed issues of fact regarding the proper construction of the 1997 contract and regarding how much Crossroads owed Lynch even if the circuit court's construction were correct.

¶ 18. We review the grant of summary judgment de novo, applying the same standard as the circuit court. *Firstar Trust Co. v. First Nat'l Bank of Kenosha*, 197 Wis. 2d 484, 492, 541 N.W.2d 467 (1995). A party is entitled to summary judgment if there is no genuine issue as to any material fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2).

---

[5] The hourly rate specified for the law clerk was $60. There were no arguments and no findings by the court on the reasonableness of this rate.

¶ 19. When a court is asked to construe a contract, the goal is to arrive at the parties' intent. *Kernz v. J.L. French Corp.*, 2003 WI App 140, ¶ 9, 266 Wis. 2d 124, 667 N.W.2d 751. If the language of the contract is plain, the court does not look outside the contract to determine the parties' intent. *Id.* The question of whether contract terms are plain or ambiguous is a question of law, which this court reviews de novo. *Id.*, ¶ 8.

¶ 20. Crossroads first argues there was undisputed evidence that Lynch accepted wages computed according to Addendum A and compensation for Compcare at a rate lower than $30 per hour after he signed the 1997 contract until he left Crossroads' employ. According to Crossroads, it is therefore entitled to a trial on whether Lynch agreed to these terms. We agree with the circuit court that the submissions do not create a genuine issue of material fact on this point. Tullis acknowledged in his affidavit that, while he believed he spoke to Lynch concerning how Lynch's wages were calculated after he signed the 1997 contract, "he [Tullis] [did] not have an immediate recall of whether or not [he] did in fact directly speak with [Lynch]" about those calculations. Tullis also averred he did not know if Lynch actually received a copy of the documents showing how compensation for Compcare patients was calculated. Crossroads provides no legal authority for its implicit premise that Lynch's acceptance of wages, in itself, creates a factual issue on the parties' intent when the language of the contract is not ambiguous.

¶ 21. Crossroads next contends that, even if the court correctly construed the 1997 contract, there are still factual disputes on how much Crossroads owes

185

Lynch. According to Crossroads, the circuit court erred in concluding that Crossroads had made deductions from wages owed Lynch and in using those figures as a basis for determining what it owed Lynch, because Crossroads never actually made those deductions; it had, rather, simply taken those items into account in computing what Lynch was owed in Addendum A. Crossroads asserts that the proper way to determine what Lynch is owed is to forget Addendum A, calculate what Lynch should have been paid under the contract as construed by the court, and subtract from that what Lynch has already received. When this is done, Crossroads asserts, Lynch is owed only $631.32.

¶ 22. There are a number of flaws in Crossroads' position. First, from the standpoint of computing what is owed Lynch under the contract as construed by the circuit court and this court, it does not matter whether items were added to the pay he received based on his hourly rate before subtracting that sum from 55% of collections to determine the "overage" to pay Lynch under Addendum A, or whether those same items were subtracted from 55% of collections to determine Lynch's pay. In both cases the amount Lynch receives is reduced by those items. We therefore do not understand the practical significance in the distinction Crossroads is making, at least for the purposes of calculating what Lynch is owed in this action.

¶ 23. Second, even if there is a practical significance to the distinction Crossroads is attempting to draw, Crossroads did not make this distinction until the motion for reconsideration. Crossroads admitted in its answer that it did make the deductions alleged in the complaint and asserted that "the deductions set forth [in the complaint] were permitted . . . under the Con-

tract of Employment between the parties in effect during the appropriate time in question." The circuit court declined to consider any submissions on the motion for reconsideration that contradicted Crossroads' answer. Whether to hold a party to a "judicial admission" is a matter for the circuit court's discretion. *Fletcher v. Eagle River Mem'l Hosp.*, 156 Wis. 2d 165, 177, 456 N.W.2d 788 (1990). More importantly, a motion for reconsideration is not a vehicle for making new arguments or submitting new evidentiary materials after the court has decided a motion for summary judgment. *See O'Neill v. Buchanan*, 186 Wis. 2d 229, 234–35, 519 N.W.2d 750 (Ct. App. 1994). Crossroads does not develop an argument with legal authority and reasoning to show that the circuit court erroneously exercised its discretion in declining to consider, on the motion for reconsideration, submissions that contradicted its answer. We see no grounds for reversing the circuit court on this ruling.

¶ 24. Similarly, it was not until the motion for reconsideration that Crossroads disputed Lynch's method of calculating what it owed him if the court accepted his construction of the 1997 contract. The calculation was attached to counsel's affidavit.[6] Cross-

---

[6] We observe one evident flaw in the method Crossroads uses in this exhibit. Crossroads subtracts the amounts Lynch was actually paid, which, according to Crossroads, included vacation and holiday pay, from 55% of collections. However, the plain language of the 1997 contract entitles Lynch to the specified vacation and holiday pay *in addition to either* $30 per hour for billable therapy hours or 55% of collections, whichever is greater. The effect of Crossroads' calculation is that it does not pay Lynch's full vacation and holiday pay if 55% of collections exceeds $30 per hour for billable therapy hours, but that is not what the contract provides.

roads asserts that the calculation was not new evidence, but was derived from exhibits already in the record. Crossroads does not provide enough detail so that we can tell whether this is true. However, even if we assume it is, that still means that Crossroads waited until after the court ruled against it on the contract construction to present a legal argument disputing the method Lynch used to calculate what he was owed under his construction of the contract. Crossroads appears to believe that it was entitled to further evidentiary proceedings after the court construed the contract, but nothing in the record supports this expectation.

¶ 25. Lynch's submissions in support of his motion for summary judgment made very clear the evidentiary basis he was relying on for each of the amounts he was seeking. For the deductions of FICA, unemployment compensation, worker's compensation, and liability insurance it was the very document that Crossroads had submitted to the Labor Standards Bureau as an accounting, and Tullis also submitted this document with his affidavit. The amounts listed for each of these items in the accounting correspond to those in other exhibits Tullis attached to his affidavit showing how Lynch's wages were computed.

¶ 26. For the vacation and holiday pay, the contract specified the number of hours per year and the hourly rate, and Lynch's affidavit averred that there were eleven holidays qualifying for holiday pay from October 1, 1997, to the end of his employment with Crossroads. Crossroads did not submit any evidentiary materials disputing that total of $3120 that Lynch claimed he was due for vacation and holidays, but instead argued that it had not deducted these amounts

in computing the overage. As we have explained, the court did not accept Tullis's affidavit on this point because it contradicted the answer and his deposition testimony. Crossroads does not argue that the court erred in doing so. Accordingly, there was no evidence to dispute the showing Lynch made that Crossroads had deducted $3120 in vacation and holiday pay in calculating the overage it paid him.

¶ 27. Finally, for the Compcare patients, Lynch relied on exhibits produced at Tullis's deposition to show the number of therapy hours Lynch provided Compcare patients and the amounts he was paid, and he calculated that, if he had been paid at $30 per hour for those hours, he would have received $2109.77. Crossroads did not dispute these numbers or the methodology, but argued simply that the contract did not require it to pay for Compcare patients at the $30 hourly rate.

¶ 28. We conclude that the circuit court correctly decided, based on the arguments made and the record before it when it ruled on the summary judgment motion, that there were no genuine issues of material fact and Lynch was entitled to $9447.82 under the 1997 contract.

## APPEAL

1. Application of Penalty Statute, WIS. STAT. § 109.11(2)(b)

¶ 29. Lynch contends the court erred in not doubling $3390.16, the portion of the unpaid wages based on deductions for FICA, in addition to the $514.64 it did double.

¶ 30. WISCONSIN STAT. § 109.11(2)(b) provides:

(b) In a wage claim action that is commenced after the department has completed its investigation under s. 109.09 (1) and its attempts to settle and compromise the wage claim under sub. (1), a circuit court may order the employer to pay to the employee, in addition to the amount of wages due and unpaid to an employee and in addition to or in lieu of the criminal penalties specified in sub. (3), increased wages of not more than 100% of the amount of those wages due and unpaid.

¶ 31. As Lynch recognizes, this statute does not require a court to impose a penalty but authorizes a court to do so in the exercise of its discretion.[7] *Hubbard v. Messer*, 2003 WI App 15, ¶ 14, 259 Wis. 2d 654, 656 N.W.2d 475. When we review the discretionary decision of a circuit court, we affirm if the court applied the correct legal standard to the facts of record and reasoned its way to a rational conclusion. *Beaudette v. Eau Claire County Sheriff's Dep't*, 2003 WI App 153, ¶ 31, 265 Wis. 2d 744, 668 N.W.2d 133. Lynch argues that the circuit court's explanation for denying a penalty on all but the $514.64—the amount of the deductions for unemployment compensation and worker's compensation—is not reasonable when applied to the FICA taxes. The court's rationale was that Crossroads had a reasonable basis for its construction of the contract. However, Lynch argues, federal law does not allow Crossroads to deduct its share of FICA taxes from an employee's wages regardless of what a contract says, and in any event, this contract does not permit it.

---

[7] Lynch asks us to adopt a standard in applying this section that is used by federal courts in applying similar, but differently worded, provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 216(b), 260 (2002). It is unnecessary to our decision to address this argument.

¶ 32. It is not obvious to us from Lynch's brief discussion of federal law on FICA that the construction of the 1997 contract in this case is irrelevant to the propriety of Crossroads deducting the employer's share of the FICA taxes in calculating what it owed Lynch under that contract. Lynch's argument on this point consists of a reference to 26 U.S.C. § 3111 (2002) (which imposes the tax on employers) and the holding in *Bubble Room, Inc. v. United States*, 159 F.3d 553, 565 (Fed. Cir. 1998), that the statute "impos[es] a separate and distinct tax liability on employers." Of course, if the contract did not contain Addendum A, then Crossroads was reducing the 55% of commissions due Lynch by its share of the FICA taxes, and that would be a violation of the federal statute. However, if Addendum A were part of his contract, the question arises whether a contract that defines wages due from commissions by a formula that takes into account the employer's share of FICA is a violation of the federal statute. Lynch does not develop an argument on this point, and he did not do so in the circuit court, beyond the citation to 26 U.S.C. § 3111 and *Bubble Room*.

¶ 33. The agency decisions also do not enlighten us on this point. The wage claim decision was based on the conclusion that Addendum A was not part of Lynch's 1997 contract and therefore Crossroads had impermissibly reduced the wages due him by the deductions it made under that formula; the decision of the bureau section chief expressly stated that it was not deciding whether Crossroads' use of the formula under Addendum A violated statutes concerning FICA, worker's compensation, and unemployment compensation. The unemployment compensation decision was also expressly based on construing the contract not to include Addendum A. The worker's compensation deci-

191

sion was ambiguous on this point. Therefore, none of the agency decisions provides an analysis under which application of the formula in Addendum A, even if agreed to by the employee, is a violation of statutes imposing on employers obligations for contributions to systems such as unemployment compensation, worker's compensation, or social security.

¶ 34. In short, Lynch has not sufficiently developed his argument that Crossroads acted unlawfully in deducting its share of FICA in applying the formula under Addendum A if that were part of Lynch's contract. We therefore cannot conclude that the circuit court erroneously exercised its discretion in tying its assessment of the reasonableness of Crossroads' position on the FICA deductions to the reasonableness of Crossroads' position on the construction of the contract. As to the latter position of Crossroads, Lynch does not develop an argument that the circuit court erred in concluding that Crossroads had a reasonable basis for its construction of the 1997 contract.

2. Attorney Fees, Wis. Stat. § 109.03(6)

¶ 35. Lynch contends the circuit court erroneously exercised its discretion in awarding only $6641.58 in attorney fees and other expenses. According to Lynch and the amicus curiae, the Wisconsin Employment Lawyers Association, the circuit court should have used the "lodestar" approach. This approach was established by the United States Supreme Court in analyzing the reasonableness of attorney fees awarded under 42 U.S.C. § 1988, which authorizes courts to award reasonable attorney fees in actions under certain federal civil

rights statutes. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). Under the lodestar approach, the starting point is the number of hours reasonably expended, multiplied by a reasonable hourly rate, with upward or downward adjustments then made after taking other relevant factors into account. *Hensley*, 461 U.S. at 434; *City of Riverside*, 477 U.S. at 568. Use of this approach is necessary, Lynch and the amicus both contend, to effectuate the purpose of WIS. STAT. § 109.03(6). According to Lynch, had the circuit court used the correct approach, it would have awarded all the fees and expenses requested. Crossroads responds that the circuit court properly exercised its discretion in considering the factors under SCR 20.1.5(a).

¶ 36. Wisconsin Stat. § 109.03(6) provides that "[i]n an action by an employee . . . against the employer on a wage claim . . . the court may allow the prevailing party, in addition to other costs, a reasonable sum for expenses." We have construed this statute to authorize a court to award reasonable attorney fees. *Jacobson v. American Tool Cos.*, 222 Wis. 2d 384, 401, 588 N.W.2d 67 (Ct. App. 1998). In reaching this result, we identified the purpose of WIS. STAT. ch. 109: to ensure that employees receive their wages when due, because if they do not, they and their families will suffer. *Id.* at 400–01. We reasoned that if the employee were not awarded attorney fees incurred in bringing an action under ch. 109, the employee would not receive the full wages he or she was entitled to, because the employee would be forced to pay the fees out of the wages awarded by the court. *Id.* at 401. That result, we concluded, would "contradict the purpose of the legislatively-created remedy." *Id.*

¶ 37. The amount of attorney fees a court decides to award under this section is committed to the circuit court's discretion. *Beaudette*, 265 Wis. 2d 744, ¶ 31. Because ·application of the correct legal standard is essential to the proper exercise of discretion, *id.*, we consider first what legal standard a circuit court should apply in determining reasonable attorney fees under WIS. STAT. § 109.03(6).

¶ 38. This court and the supreme court have approved the application of the factors in SCR 20:1.5(a) in reviewing a circuit court's exercise of discretion in determining reasonable attorney fees under fee-shifting statutes. *See, e.g., Village of Shorewood v. Steinberg*, 174 Wis. 2d 191, 204–06, 496 N.W.2d 57 (1993); *Standard Theatres v. DOT*, 118 Wis. 2d 730, 749, 349 N.W.2d 661 (1984) (both discussing attorney fees under WIS. STAT. § 32.28(3), involving condemnation proceedings); *Kolupar v. Wilde Pontiac Cadillac, Inc.*, 2003 WI App 175, ¶ 16, 266 Wis. 2d 659, 668 N.W.2d 798 (awarding attorney fees against a motor vehicle dealer under WIS. STAT. § 218.0163(2)); *Beaudette*, 265 Wis. 2d 744, ¶ 33 (under WIS. STAT. § 109.03(6)). However, we are not aware of any reported case that has addressed the relationship of the "lodestar" approach to the application of SCR 20:1.5(a) when awarding reasonable attorney fees under a state fee-shifting statute.

¶ 39. As Lynch and the amicus acknowledge, United States Supreme Court decisions construing federal fee-shifting statutes are binding on courts of this state only with respect to those federal statutes.[8] None-

---

[8] The Supreme Court has extended the *Hensley* analysis to all federal fee-shifting statutes. *See City of Burlington v. Dague*, 505 U.S. 557, 565–67 (1992).

theless, we have considered those cases persuasive and have adopted their approach in deciding whether parties have "prevailed" under various Wisconsin fee-shifting statutes, that is, statutes that allow recovery of attorney fees by the prevailing party. *See, e.g., Community Credit Plan, Inc. v. Johnson*, 221 Wis. 2d 766, 775–76, 586 N.W.2d 77 (Ct. App. 1998), *aff'd* 228 Wis. 2d 30, 596 N.W.2d 799 (1999) (awarding attorney fees under WIS. STAT. § 425.308, the fee provision of the Wisconsin Consumer Act); *Radford v. J.J.B. Enterprises, Ltd.*, 163 Wis. 2d 534, 550, 472 N.W.2d 790 (Ct. App. 1991) (under WIS. STAT. § 100.18(11)(b)2, protecting against deceptive advertising); *J.S. v. State*, 144 Wis. 2d 670, 680, 682, 425 N.W.2d 15 (Ct. App. 1988) (under WIS. STAT. § 51.61(7)(c), protecting patients' rights). We have also adopted the approach of federal case law in deciding to allow reasonable attorney fees necessary to litigate the reasonableness of a fee under state fee-shifting statutes. *Chmill v. Friendly Ford-Mercury*, 154 Wis. 2d 407, 414–15, 453 N.W.2d 197 (Ct. App. 1990) (under WIS. STAT. § 218.0171(7), the Wisconsin Lemon Law); and in deciding that the circuit court did not err in refusing to reduce fees below a reasonable rate applied to a reasonable number of hours because of a contingent fee agreement. *Wright v. Mercy Hosp.*, 206 Wis. 2d 449, 470–71, 557 N.W.2d 846 (Ct. App. 1996) (under WIS. STAT. § 51.61(7)(a)).

¶ 40. Although SCR 20:1.5(a) does not explicitly refer to a reasonable number of hours and a reasonable hourly rate, SCR 20:1.5(a)(1), (3), and (7) do cover these. Examination of "the time and labor required [and] the novelty and difficulty of the questions involved," SCR 20:1.5(a)(1), addresses the amount of time reasonably required in the particular case. Examination of "[t]he skill requisite to perform the legal service

195

properly," SCR 20:1.5(a)(1), "[t]he fee customarily charged in the locality for similar legal services," SCR 20:1.5(a)(3), and "[t]he experience, reputation, and ability of the lawyer or lawyers performing the services," SCR 20:1.5(a)(7), addresses the reasonableness of the hourly rate. Indeed, the court in *Hensley* made essentially the same observation when it stated that many of the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which were appropriate to take into account after arriving at the lodestar to adjust the fee upward or downward, "usually are subsumed within . . . the hours reasonably expended at a reasonable hourly rate." 461 U.S. at 434 n.9. The factors listed in *Johnson* were derived directly from the American Bar Association Code of Professional Responsibility, Disciplinary Rule 2–106, *Hensley*, 461 U.S. at 430 n.3, and they are the same factors contained in SCR 20:1.5(a) except that the latter does not contain "the 'undesirability' of the case" and "awards in similar cases."

¶ 41. While the factors of a reasonable hourly rate and a reasonable number of hours expended are included in SCR 20:1.5(a), there are advantages to using those two as a starting point, as the court in *Hensley* decided. Those two factors are relevant in every case in which a court determines reasonable attorney fees under a fee-shifting statute such as WIS. STAT. § 109.03(6), while other factors listed in SCR 20:1.5(a) are not always relevant. In addition, those two factors are useful as a context for evaluating any other relevant factors: as the court in *Hensley* explained, this calculation "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." 461 U.S. at 433. Accordingly, we conclude that in determin-

ing what a reasonable attorney fee is under § 109.03(6), a circuit court should start with a determination of a reasonable hourly rate and a reasonable number of hours and then make adjustments for other factors in SCR 20:1.5(a) or any other relevant factors.

¶ 42. In this case, the circuit court determined the evidence showed that the hourly rate of $225 was reasonable. However, instead of then determining what number of hours were reasonably necessary to perform the work, the court went directly to a consideration of other factors in SCR 20:1.5(a).[9] The reasons the court gave for awarding $6641.58, including costs, were the following: the questions involved were not novel or difficult; a high level of skill was not necessary to perform the legal services and "an experienced attorney [did not need] to devote the amount of time to this case because the issues were relatively mundane contract issues[;] . . . the case was resolved . . . on summary judgment without the need for extensive trial preparation or protracted litigation[;]" and a fee request of

---

[9] Some of the language the court used suggests that it was following the *Hensley* approach. After determining that $225 was a reasonable fee based on the evidence, the court stated that "[p]laintiff's calculation of attorney fees becomes a base figure for determining the reasonableness of the fee. This figure can then be adjusted upward or downward after considering several factors known as the *Johnson* Factors . . . . These factors are set forth in SCR 20:1.5 . . . ." To clarify, under *Hensley* and our holding today, the "plaintiff's calculation" is not the "base figure" or starting point; rather, a determination of a reasonable hourly rate and the number of hours reasonably expended is the starting point. The circuit court does not start by accepting the number of hours for which the plaintiff's counsel requests payment, but instead undertakes its own analysis of whether those hours were reasonably necessary, and, if they are not, what number of hours were reasonably necessary.

197

almost $15,000 is excessive when the amount involved is only approximately $10,000. In addition, the court stated that attorney fees of $6641.58 would make Lynch "completely whole for the monies he had coming for his full wages and benefits." We understand this last rationale to be a reference to Lynch's fee agreement. Under this agreement between Lynch and his counsel, attorney fees were the greater of the attorney fees awarded by the court or (if before any appeal) 40% of the recovery inclusive of attorney fees awarded. Although the court did not explain how it arrived at the very precise figure of $6641.58, it appears the court applied the fee agreement formula: 40% of the sum of $9962.46 (the wages and penalty awarded) plus $6641.58 equals $6641.62.[10] Thus, it is apparent that the circuit court used the fee agreement to calculate the lowest attorney fee award that would not require Lynch to use part of his award to pay his attorney.

¶ 43. The circuit court's observations on the difficulty of the issues and the skill required are supported by the record, as are its observations that the court proceeding was resolved on summary judgment and was not protracted. However, those observations do not indicate what amount of time was reasonably necessary given those factors nor do they necessarily mean the amount of time Lynch's counsel spent was not reasonable. The largest amounts of time were spent on taking the depositions of Tullis and Schroeder and defending the deposition of Lynch, as well as the preparation of the exhibits and two briefs on the motion for summary judgment. We are uncertain from the circuit court's comments whether

---

[10] It appears that the circuit court transposed two numbers, getting $3984.948 as the product of 40% times $9962.46, rather than $3984.984. That accounts for the difference between $6641.58 and $6641.62.

it viewed this discovery as unnecessary and, if so, why. Similarly, we are uncertain whether the court viewed the amount of time spent on briefing unreasonable and, if so, why. A necessary ingredient in analyzing whether the time spent on these and other tasks was reasonable is the amount of work required to respond to Crossroads' positions. It is true that some of the amounts the court concluded were undisputed were determined by the administrative agencies, but the holiday and vacation pay and Compcare patients were not. More importantly, Crossroads disputed the amounts determined by the agencies and presented numerous and often inconsistent theories as to why it owed Lynch nothing. We recognize that the circuit court is better situated than we are to discern unnecessary expenditures of time, but without the aid of more specific comments, we are unable to tell from the record which expenditures of time the court viewed as unnecessary or excessive. Given the hourly rate the court found reasonable—$225 per hour—the fee the court arrived at means that 29.5 hours were all that were reasonably necessary (ignoring for the moment the eight hours spent by the law clerk and the costs). However, nothing in the record explains why approximately half of the attorney's time was unnecessary.

¶ 44. We are not suggesting that the circuit court needs to itemize each entry it determines is unnecessary, but some explanation of the unnecessary tasks is needed to assist us in reviewing the circuit court's decision. For example, in *Beaudette* we affirmed a circuit court's decision to award $9500 in attorney fees on a wage claim rather than the $14,087 requested because, among other factors, the circuit court found that much of the time spent by three attorneys was devoted to research and interoffice conferences, and, given the absence of case law in the area, the circuit court considered the time

199

spent on research unreasonable. 265 Wis. 2d 744, ¶ 33. Similarly, in *Kolupar*, 266 Wis. 2d 659, ¶¶ 17–18, we affirmed a circuit court's decision to award $15,000 in attorney fees rather than the $53,000 requested because the plaintiff's attorneys conducted unnecessary discovery, "over pled" her claim, missed discovery deadlines, and "over tried" the case.

¶ 45. The circuit court's use here of the fee agreement to arrive at attorney fees is not an adequate substitute for determining whether the number of hours expended was reasonable and, if not, what would be a reasonable number. The court's use of the fee agreement does assure that Lynch need not pay attorney fees out of his recovery. However, it thwarts another important purpose of fee-shifting statutes such as Wis. Stat. § 109.03(6): encouraging attorneys to take meritorious cases they would not otherwise take because the amount at stake is not large. *See Shands v. Castrovinci*, 115 Wis. 2d 352, 358, 340 N.W.2d 506 (1983) (discussing Wis. Stat. § 100.20(5)). Reducing requested fees to the minimum necessary under a fee agreement to avoid a client having to pay from the recovery, without an analysis of the reasonableness of the hours expended, will discourage rather than encourage attorneys to take meritorious wage claim cases. Such a method for arriving at a fee is not logically related to a reasonable fee.[11]

¶ 46. Another reason the court gave for its decision also thwarts the purpose of encouraging attorneys to take meritorious wage claims for modest amounts.

---

[11] If we are in error and the circuit court did not arrive at $6641.58 based on the fee agreement as we have surmised, we would nonetheless reverse and remand because we are not able to tell from the record how the court arrived at that amount.

The court compared the size of the award to the fees requested, without explaining why the size of the award made a smaller amount of fees reasonable. In this case, Lynch recovered all the wages he sought and some of the penalty he sought. There is no suggestion in the record that Crossroads would have paid him the wages he sought without this litigation—the agency decisions certainly had not induced it to do so. We recognize that SCR 20:1.5(a)(4) does list as a factor "the amount involved and the results obtained." We do not suggest this factor is irrelevant in determining a reasonable fee under a fee-shifting statute such as WIS. STAT. § 109.03(6), but its significance must be understood in the context of the purposes of the fee-shifting statute. A small recovery in relation to the amount sought might be relevant because it might indicate time was spent by the attorney that was not reasonably necessary. *See Kolupar*, 266 Wis. 2d 659, ¶¶ 16–17. A rejected settlement offer that turns out to be the same as the amount recovered might also bear on the reasonableness of the hours expended. There are no doubt other examples. But the amount recovered in itself is not a reason to reduce a fee below an amount that represents a reasonable hourly rate for a reasonable number of hours expended, particularly where, as here, the wage claimant recovers all the unpaid wages he sought. Any other approach has the likely result of making legal representation more difficult to obtain in cases involving small amounts of unpaid wages; yet it may be precisely the wage claimants owed the smallest amounts who are most in need of their unpaid wages.[12]

---

[12] In *Beaudette v. Eau Claire County Sheriff's Department*, the circuit court compared the fee requested to the amount recovered as a one of the factors in its analysis, and we listed

¶ 47. In summary, we conclude the circuit court erroneously exercised its discretion by: (1) not first determining a reasonable number of hours to expend on this case, which, when multiplied by the hourly fee the court found reasonable, should have been the starting point for the consideration of other factors; (2) calculating a fee as it apparently did based on the fee agreement; and (3) considering the amount recovered, in itself, as a factor favoring reduction below a reasonable hourly rate for a reasonable number of hours.

¶ 48. However, we do not agree with Lynch that the circuit court was obligated to find that the number of hours his attorney expended were reasonable solely because the two affidavits submitted by other attorneys averred they were and there was no evidence to the contrary. Lynch relies on *Crawford County v. Masel*, 2000 WI App 172, 238 Wis. 2d 380, 617 N.W.2d 188, in which we addressed the issue of determining a reasonable hourly rate under 42 U.S.C. § 1988. We concluded that, because the plaintiff's submissions supported the reasonableness of his attorney's requested hourly rate and the defendant's affidavit lacked adequate foundation to support a lower rate, the court erroneously exercised its discretion by adopting that lower rate. *Id.*, ¶¶ 14–18. In reaching our conclusion, we stated that the court's belief based on its own experience that the requested rate was unreasonable could not be the sole basis for finding a requested rate to be unreasonable,

this as one of the factors that was appropriate for the court to consider. 2003 WI App 153, ¶¶ 32–33, 265 Wis. 2d 744, 668 N.W.2d 133. However, apparently because the issue was not raised in that case, we did not discuss whether the amount of the recovery in itself could properly be a basis for reducing a fee below an amount that represents a reasonable hourly rate times a reasonable number of hours expended.

where the attorney provides "substantial factual and opinion evidence to prove the prevailing market rate in the community." *Id.*, ¶¶ 16, 17 & n.6.

¶ 49. Our analysis in *Crawford County* was directed to the determination of a reasonable hourly rate, not a reasonable number of hours expended. That distinction is significant. A circuit court's assessment of the amounts of time reasonably expended by an attorney on a case over which the circuit court presides is based on the court's firsthand observations on that particular case. It is not based on prior experiences of the court or facts outside the record, which the plaintiff would have no way of knowing or disproving, as it is when the court relies on its own experiences to determine a reasonable hourly rate. *See id.* With respect to the amount of time reasonably expended, the presiding judge may well have relevant information that attorneys not involved in the case do not have from a review of the record. Thus, while the circuit court must consider the affidavits of other attorneys supporting the reasonableness of the number of hours expended by the plaintiff's counsel, we conclude the court is not obligated to accept their opinions solely because there are no controverting affidavits. Rather, after considering those affidavits, the circuit court may use its own firsthand knowledge of the proceeding in determining the number of hours reasonably expended.

¶ 50. Because the circuit court erroneously exercised its discretion in determining a reasonable attorney fee, we reverse and remand for a determination of a reasonable fee consistent with this opinion.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.