IN the MATTER OF the ATTORNEY FEES RE:

CRAWFORD COUNTY, Plaintiff-Respondent,

v.

Ben MASEL, Defendant-Appellant.

Court of Appeals

*No. 99–1055. Submitted on briefs February 16, 2000.—Decided July 27, 2000.*

## 2000 WI App 172

(Also reported in 617 N.W.2d 188.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Jeff Scott Olson* of *The Jeff Scott Olson Law Firm, S.C.* of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Scott G. Thomas* of *Law Offices of Scott G. Thomas* of Milwaukee.

Before Dykman, P.J., Eich and Roggensack, JJ.

¶ 1. ROGGENSACK, J. Ben Masel appeals from a judgment awarding him attorney's fees under 42 U.S.C. § 1988 (1994),[1] after he successfully challenged Crawford County's large assembly ordinance. He claims that the circuit court erred in establishing an hourly rate for his attorney's services at $175 per hour because the affidavits before the court demonstrated that the reasonable rate for his attorney was

---

[1] All cites to the United States Code are to the 1994 version unless otherwise noted.

$285 per hour. Because we conclude that the record does not support $175 per hour as a reasonable rate for his attorney's services, we reverse that portion of the judgment and remand this matter to the circuit court to set an hourly rate consistent with this opinion.

## BACKGROUND

¶ 2.   Ben Masel was the promoter and organizer of Weedstock 1997, a political and social gathering to build support for the liberalization of the agricultural production of hemp, the medical use of marijuana and the elimination of penalties for the recreational use of marijuana. Weedstock was held in Crawford County over a four-day period and attended by more than 1,000 participants.

¶ 3.   Crawford County brought a forfeiture action against Masel[2] for failing to comply with its ordinance regulating large assemblies. Masel filed a counterclaim alleging that the ordinance was unconstitutional and that its application to him by the County violated 42 U.S.C. § 1983. On motions for summary judgment, the court ruled that parts of the ordinance were unconstitutional and dismissed the ordinance prosecution against Masel. Masel then filed an application for attorney's fees under 42 U.S.C. § 1988. Masel's attorney, Jeff Scott Olson, sought payment for 91.3 hours of work at $285 per hour. Olson submitted his own affidavit attesting to his skill and experience as a civil rights attorney and stating that his normal billing rate for paying clients was $285 per hour. Olson also submitted the affidavits of several other prominent civil rights attorneys who averred that they had or were person-

---

[2] The County also sued Arnold Harris, on whose property the gathering took place. Harris is not a party to this appeal.

ally familiar with billing rates between $200 and $295 per hour for civil rights cases.

¶ 4. The County claimed that the rate of $285 per hour was unreasonable. In support of its claim, it submitted the affidavit of R. Scott Ritter, who was an Assistant City Attorney for the City of Milwaukee from 1976 until 1989. Ritter opined that an hourly rate of $150 to $175 was more appropriate than the $285 requested by Olson. The circuit court determined that the amount of hours expended, 91.3 hours, was reasonable. This has not been challenged on appeal. However, it concluded that $285 per hour for Olson was unreasonable, and it reduced his billing rate to $175 per hour. Masel appeals.

## DISCUSSION

**Standard of Review.**

¶ 5. An award of attorney's fees under 42 U.S.C. § 1988 is within the discretion of the circuit court, and a circuit court's determination will be reversed only when there has been an erroneous exercise of discretion. *See Hartman v. Winnebago County*, 216 Wis. 2d 419, 427–28, 574 N.W.2d 222, 227 (1998). When we review a discretionary decision, we examine the record to determine if the circuit court logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion that a reasonable judge could reach. *See State v. Keith*, 216 Wis. 2d 61, 69, 573 N.W.2d 888, 892–93 (Ct. App. 1997).

**Attorney's Fees.**

¶ 6.   Title 42 U.S.C. § 1988 provides that in federal civil rights actions "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In the present case, the parties agree that Masel was a prevailing party on his 42 U.S.C. § 1983 claim.[3] The only dispute before us on appeal is whether the court erred in establishing an hourly rate of $175 per hour as a reasonable rate.[4]

¶ 7.   In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the Supreme Court considered whether a partially prevailing party was entitled to recover attorney's fees under 42 U.S.C. § 1988. In analyzing whether a particular attorney's fee is reasonable, the Court stated that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley*, 461 U.S. at 433.[5]

---

[3] The record before us does not show that any proof was offered that the County's attempt to enforce the ordinance contravened 42 U.S.C. § 1983. However, the County apparently has conceded liability on the § 1983 claim, even though the trial court rendered only a declaratory judgment that certain portions of the ordinance were unconstitutional and therefore unenforceable.

[4] We initially note that because the award of attorney's fees in this matter is pursuant to a federal statute, we look to federal caselaw for the standards governing this type of award. *See Thompson v. Village of Hales Corners*, 115 Wis. 2d 289, 308 n.6, 340 N.W.2d 704, 713 n.6 (1983).

[5] The product of multiplying the number of hours reasonably expended by the reasonable hourly rate has become known as the "lodestar" calculation. *See, e.g., City of Riverside v. Rivera*, 477 U.S. 561, 568 (1986). The lodestar may be adjusted by applying the factors stated in *Johnson v. Georgia Hwy.*

The Court explained that this calculation provided an objective basis for valuing a lawyer's services. *See id.* Additionally, the Court noted that it was the fee applicant's affirmative obligation to submit evidence supporting the hours worked and the rates claimed. *See id.*

¶ 8. Shortly after the Court decided *Hensley*, it considered whether Congress intended attorney's fee awards made pursuant to 42 U.S.C. § 1988 to be calculated according to prevailing market rates. *See Blum v. Stenson*, 465 U.S. 886 (1984). The *Blum* Court concluded that the appropriate measure of a reasonable attorney's fee should be based on "the prevailing market rates in the relevant community. . . ." *See id.* at 895. In so doing, the Court recognized the difficulty of determining the market rate for attorneys. However, it noted that the rates charged in private representations could provide relevant comparisons, stating:

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895 n.11.

---

*Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974), which have been adopted by the Supreme Court. *See Riverside*, 477 U.S. at 568 n.3.

¶ 9.  In subsequent cases, the Supreme Court has "repeatedly stressed that attorney's fees awarded under this statute are to be based on market rates for the services rendered." *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989); *see also Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). The Court has explained that a successful plaintiff is entitled to a "fully compensatory" attorney's fee that is comparable to what fee-paying clients would pay. *See Jenkins*, 491 U.S. at 286 (citations omitted). The Court reasoned that calculating fees in this way is necessary "to ensure that lawyers would be willing to represent persons with legitimate civil rights grievances . . . ." *City of Riverside v. Rivera*, 477 U.S. 561, 578 (1986). Furthermore, it has emphasized that the lodestar calculation is more than a mere rough guess; instead, once an applicant has carried his burden of showing that a claimed rate and number of hours are reasonable, "the resulting product is presumed to be the reasonable fee contemplated by § 1988." *See Blum*, 465 U.S. at 897.

¶ 10.  To support his application for attorney's fees, Masel submitted Olson's affidavit outlining his skill and experience in civil rights cases. Olson averred that he has been practicing law since 1976 and his practice throughout his career has consisted primarily of civil rights litigation. He also attested that his hourly billing rate for paying clients was $285 per hour and that a majority of his income comes from clients paying his billing rate of $285 per hour. Additionally, his affidavit included a list of clients that currently pay his full billing rate.

¶ 11.  Masel also submitted affidavits from four other civil rights attorneys: Charles Barnhill, Michael R. Fox, Percy L. Julian and Curry First. Each attested to his experience in civil rights litigation. Additionally,

Barnhill averred that his hourly rate was $285 and that he had been awarded that rate in a civil rights case brought in the Western District of Wisconsin. Fox averred that his current billing rate was $295 per hour and in 1995 he had been awarded $225 per hour (his billing rate at the time) in a civil rights case. Julian averred that his billing rate was $240 per hour. He also attested that he was aware of the customary hourly rates of senior attorneys in major metropolitan areas of Wisconsin who engage in federal litigation and that, in his experience, such attorneys charge between $200 and $290 per hour. Finally, First averred that Olson enjoyed a statewide reputation as one of the best civil rights lawyers in Wisconsin. All four attorneys (Barnhill, Fox, Julian and First) asserted that $285 per hour was a reasonable rate for Olson's services based upon the prevailing market rates and Olson's level of experience.

¶ 12. In response to Masel's request for fees, the County submitted the affidavit of Ritter. He averred that: (1) he is an attorney licensed in Wisconsin; (2) he has been practicing law since 1975; (3) he was an Assistant City Attorney for Milwaukee from 1976 to 1989 and was primarily responsible for defending civil rights actions; (4) since 1989, he has continued to defend actions brought under 42 U.S.C. § 1983; (5) he has been qualified twice to testify as an expert witness in civil rights attorney's fees cases; (6) he is familiar with hourly rates sought by and awarded to civil rights attorneys under 42 U.S.C. § 1988; and (7) given Olson's skill level, an hourly rate of $150 to $175 would be "more appropriate" than the $285 requested. After he gave his affidavit, Ritter's deposition was taken, and it was also submitted to the circuit court by Masel.

¶ 13.    At a hearing on the matter, the circuit court ordered that Olson be compensated at $175 per hour. In explaining its decision, the court stated:

> For Mr. Olson, he's billing at the rate of $285 an hour and he has some affidavits of attorneys to support that rate and the county has an affidavit of an attorney to say that the rate should be much less than that, such as $150 to $175 an hour.
>
> I think one of the factors to be considered is that this type of constitutional issue often requires some special skill. Often the attorneys who practice these types of cases do have such special skills or area of expertise. Now, we're way over here in Podunk in the rural area and nobody over here charges anything near that. But, I realize that the standard of Crawford County is not the standard that I'm going by. That it's more of a statewide standard. However, I just [cannot] order $285 an hour. It is not reasonable under all the circumstances here. I think that the maximum that should be awarded to Mr. Olson should be $175 per hour, based in part at least on what Mr. Ritter says but also on the totality of what I've heard and just my own feeling that $285 is not reasonable for this case.

Therefore, the circuit court based its decision to award $175 per hour upon Ritter's affidavit and its own belief that $285 per hour was not reasonable. However, those bases are not sufficient to support the circuit court's exercise of discretion in this case.

¶ 14.    In order to determine a reasonable rate for Olson's services, the circuit court was obligated to determine the prevailing market rate for an attorney with Olson's level of skill and experience. The Supreme Court has indicated that hourly rates charged by other attorneys of comparable skill can be one indicator of a

particular attorney's market rate. Masel met his initial burden of supporting his fee application by providing an affidavit from Olson testifying to his experience and the billing rate paid by the majority of his paying clients and by providing the rates of civil rights attorneys of comparable skill. Once Masel did so, if the County wished to challenge this rate, it was required to put forth factual evidence that the prevailing market rate for an attorney with comparable skill was not consistent with the proof offered by Masel.

¶ 15.   However, the County did not present sufficient evidence to refute the prevailing market rate asserted on behalf of Olson's fees. Ritter's affidavit provides only curt conclusions without averring the factual predicates necessary to support those conclusions. Specifically, Ritter asserts "[w]ith respect to the claimed 'currently regular hourly rate of $285.00 per hour'. . . . requested by attorney Olson, it is my opinion and belief that, given attorney Olson's level of competence and experience, an hourly rate of $150-$175 would be more appropriate." Ritter does not explain what is meant by "more appropriate," nor does he attest that the "more appropriate" rate is the prevailing market rate. Furthermore, in his deposition taken after the submission of his affidavit, Ritter admitted that he did not know the current rates of any civil rights lawyers; that the last time he had been involved in a question concerning such fees was about eight years earlier; and that, at the time, $225 had been determined to be a reasonable hourly rate. Ritter's affidavit was inadequate to refute Masel's evidence of the prevailing market rate, and therefore the circuit court erred in relying upon it as a basis for establishing $175 per hour as a reasonable rate for Olson's services.

¶ 16.   The other basis relied upon by the circuit court to support its establishment of $175 as the reasonable hourly rate was the court's own belief that $285 per hour was not reasonable. Although we have recognized that a trial judge has the expertise to evaluate the reasonableness of attorney's fees, we have also held that when the reasonableness of the fees is contested, the expertise of a trial judge is not a substitute for evidence. *See Peterson v. Gauger*, 148 Wis. 2d 231, 237, 434 N.W.2d 819, 821 (Ct. App. 1988). Additionally, the Seventh Circuit in evaluating the reasonableness of fees under 42 U.S.C. § 1988 has held that, although a trial court has wide discretion in calculating an appropriate fee award, if an hourly rate or number of hours is reduced, "a clear explanation must be provided." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 518 (7th Cir. 1993) (citation omitted). The Seventh Circuit has also reiterated the prohibition against a trial court "eyeballing" a fee request and arbitrarily reducing a fee request by the prevailing party without evidence to support the reduction. *See People Who Care v. Rockford Bd. of Educ.*, 90 F.3d 1307, 1314 (7th Cir. 1996).

¶ 17.   Although we are not bound by these Seventh Circuit opinions, *see Elections Bd. v. Wisconsin Mfrs. & Commerce*, 227 Wis. 2d 650, 670 n.19, 597 N.W.2d 721, 731 n.19 (1999), they are persuasive. Therefore, we conclude that given the ample factual and opinion evidence submitted by Masel that Olson's billing rate was consistent with the current market rate and therefore presumptively reasonable and, absent any description by the circuit court of the facts it

relied on to conclude that $285 per hour was unreasonable, it erroneously exercised its discretion.[6]

¶ 18.  Because we conclude that the circuit court erroneously exercised its discretion in establishing $175 per hour as a reasonable rate for Olson's services, we reverse and remand that portion of the judgment. The circuit court on remand should review the affidavits submitted by Masel and set a market rate consistent with that evidence. In his affidavit, Julian averred that the billing rates for civil rights attorneys with skills and experience comparable to Olson were between $200 and $290 per hour. Additionally, three of the civil rights attorneys who submitted affidavits in support of Olson testified that their billing rates were between $240 and $295 per hour. Accordingly, on remand the circuit court's determination of the reasonable rate for Olson's services should fall somewhere between $200 and $295 per hour based upon the evidence of market rate in the community that is in the record before us. We also direct the circuit court to set a reasonable fee for Olson's services in this appeal.

## CONCLUSION

¶ 19.  Because we conclude that the record does not support $175 per hour as a reasonable rate for

---

[6] By so ruling, we do not conclude that a circuit court's expertise in evaluating evidence concerning the rate charged for legal fees in the community is irrelevant. However, when an attorney provides substantial factual and opinion evidence to prove the prevailing market rate in the community, the court cannot rely solely on its own experience to conclude that the fee is unreasonable. To rule otherwise would permit a circuit court to make a decision that is not based on facts in the record and would deny the party seeking fees the opportunity to challenge the facts upon which the circuit court's decision is based.

Olson's services, we reverse that portion of the judgment and remand this matter to the circuit court to set an hourly rate consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.