Joseph Kuehn and Jane Kuehn, Plaintiffs-Appellants,
v.
Peppertree Resort Villas, Inc., and Peppertree Resorts Ltd. d/b/a Peppertree at Tamarack, Defendants-Respondents.
No. 03-1179.
Court of Appeals of Wisconsin.
Opinion Filed: July 22, 2004.
Before Deininger, P.J., Dykman and Lundsten, JJ.
¶1 DEININGER, P.J.
Joseph and Jane Kuehn appeal a judgment awarding them $13,730 in attorney's fees under WIS. STAT. §§ 707.57(1)(b) and 425.308 (2001-02).[1] The Kuehns contend that the trial court erroneously exercised its discretion when it reduced their requested attorney's fees by one-half. Specifically, they assert that the court improperly looked to hourly rates for public defender and guardian ad litem appointments instead of those for private bar attorneys engaged in work comparable to the services the Kuehns' attorney performed for them. Additionally, the Kuehns claim that the court failed to consider evidence supporting an award of a fully compensatory fee. Although we agree that the trial court erred in considering the hourly rates paid to publicly appointed attorneys, we conclude that the other factors properly considered by the trial court support its determination that reasonable attorney fees in this case were one-half of the fees requested by the Kuehns. Accordingly, we affirm the appealed judgment.

BACKGROUND
¶2 This litigation concerns the sale by Peppertree Resort Villas, Inc., or a related entity, of a time-share interest in Sauk County recreational property to the Kuehns. Similar transactions, numbering in the hundreds, have spawned other litigation against Peppertree, resulting in two previous opinions of this court,[2] as well as multiple proceedings in the circuit courts for Dane, Sauk, and Milwaukee Counties. The merits of the underlying litigation, however, are not before us in this appeal. The Kuehns challenge only the trial court's reduction of the attorney's fees they requested after prevailing on their claim against Peppertree.
¶3 After receiving numerous consumer complaints regarding Peppertree's time-share sales practices, the Department of Agriculture, Trade, and Consumer Protection (DATCP) initiated an investigation, in which the Kuehns and numerous other time-share purchasers participated. The DATCP procured a consent order requiring Peppertree to pay a civil forfeiture and set up a restitution fund to compensate persons who alleged they incurred economic harm as a result of their dealings with Peppertree. See State v. Peppertree Resort Villas, Inc., 2002 WI App 207, ¶¶2-3, 257 Wis. 2d 421, 651 N.W.2d 345. Prior to the entry of the DATCP consent order, however, the Kuehns opted out of the consent order and pursued their claim independently via private counsel.
¶4 The Kuehns' suit against Peppertree spanned roughly three years and included a contentious dispute over the scope of requested discovery. The Kuehns served discovery demands encompassing 187 interrogatories, 129 document requests and sixty-four requests to admit. When a dispute arose, the Kuehns filed a motion to compel and Peppertree countered with a motion for a protective order. The trial court granted Peppertree's request for an order that it need not respond to further discovery requests from the Kuehns. The trial court characterized as "outrageous" a particular Kuehn interrogatory that sought information regarding 411 different Peppertree employees, a request that was not justified, in the court's view, because of the relatively modest amount in dispute and the lack of complexity of the case. After the court decided the parties' motions for summary judgment, Peppertree filed an offer of judgment. See WIS. STAT. § 807.01(1). The Kuehns accepted the offered judgment approximately three weeks before the scheduled jury trial date.
¶5 The accepted offer provided for entry of judgment against Peppertree for $10,750 in damages, "plus costs and reasonable attorneys fees as decided by the Court." As additional relief, the judgment provided that the parties' transaction was "cancelled," that Peppertree would take steps to have any adverse credit report information arising from the transaction deleted, and it would place the Kuehns on a "do not call" list. The Kuehns requested costs in the amount of $1,419.59, which were not disputed, and $27,460 in attorney's fees under WIS. STAT. §§ 425.308 and 707.57(1),[3] based on 137.3 hours of legal work at a billing rate of $200 per hour. Peppertree objected to the attorney fee request, suggesting that "[a]n award of zero would be justified, but in no event should the award exceed $5,000."
¶6 The trial court, without a hearing, issued a written decision awarding the requested costs but reducing the attorney fees requested by one-half, awarding instead the sum of $13,730 in attorney's fees. Judgment was entered against Peppertree for $10,750 plus the allowed costs and attorney's fees. The Kuehns appeal, arguing only that the trial court erroneously exercised its discretion in reducing their requested attorney's fees by one-half.

ANALYSIS
¶7 The parties agree that, in its written decision, the trial court correctly identified the proper standards for determining reasonable attorney fees as set forth in WIS. STAT. § 425.308(2) (see footnote 3), Hensley v. Eckerhart, 461 U.S. 424 (1983),[4] and SCR 20:1.5(a).[5] They also agree that "the most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," sometimes referred to as the "lodestar" calculation. Crawford County v. Masel, 2000 WI App 172, ¶7, 238 Wis. 2d 380, 617 N.W.2d 188 (quoting Hensley, 461 U.S. at 433). Thus, the present dispute centers on whether the trial court properly applied these standards.
¶8 The trial court identified several factors influencing its decision. In the Kuehns' favor, the trial court acknowledged the "troubled history of the litigation involving Peppertree," including the fact that "[i]nitially, Peppertree was not forthcoming in terms of discovery and process." However, the court also found that the Kuehns "over litigated," and that "[t]he need for hundreds of written interrogatories ... is not apparent" because "[m]any of the basic facts, which proved violations of the code, were evident and present from the beginning."
¶9 The trial court also considered, but rejected, the Kuehns' claim that their counsel had fulfilled the role of a "private attorney general," which serves as part of the rationale for statutory fee-shifting provisions in the statutes at issue and other consumer protection statutes.[6] The court noted that the State of Wisconsin had already acted to protect the public interest by commencing legal actions against Peppertree:[7]
Large forfeitures were paid by [Peppertree] and funds were escrowed with Justice and a mechanism provided where consumers involved with [Peppertree] could file their claims for provable and related damages and be paid. The Attorney General did act to protect the public interest and the [Kuehns]' counsel action on this account is de minimus.
¶10 In addition, the trial court gave considerable weight to the amount involved and the results achieved in the Kuehns' three-year individual lawsuit. The court concluded that "[t]he standard of result and outcome does not support" an award of over $27,000 in attorney fees because, if the Kuehns "had availed themselves to settlement procedure established by the Department of Justice, they could have recovered nearly as much as the offer of judgment which they accepted."
¶11 Finally, the trial court compared the requested attorney billing rate of $200 per hour to compensation rates for attorneys appointed by the State Public Defender (SPD) and circuit courts, which range from $40 to $70 per hour. The court stated that it did "not question the accuracy of the account of the hours the [Kuehns]' counsel spent and submitted," and that it was "not insensitive to the expenses and overhead of [a] private practitioner." It then concluded its determination as follows: "All things considered the Court finds it reasonable to fix the hourly rate at $100.00 per hour and award $13,730.00."
¶12 The Kuehns' principal argument on appeal is that the trial court erred in considering the compensation rates paid to publicly-appointed counsel, while ignoring the affidavits they produced establishing that $200 per hour is a reasonable and customary rate for attorneys engaged in pursuing consumers' rights litigation. They claim there is no basis in either the record or applicable law for the trial court to cut their attorney's requested billing rate in half, and the court's decision to do so thus constituted an erroneous exercise of discretion. In response, Peppertree does not claim that the requested $200 per hour billing rate is unreasonable, and it does not attempt to justify the court's halving of the requested billing rate per se. Rather, Peppertree contends that the trial court reduced the hourly rate simply "as the means to arrive at a total reasonable fee for the work based upon the record as a whole," which Peppertree asserts the court was entitled to do in exercising its discretion to award reasonable attorney fees in this case. We agree that the result reached by the trial court is an affirmable discretionary determination.
¶13 We review a trial court's determination of reasonable attorney fees awarded under a fee-shifting statute for an erroneous exercise of discretion. Standard Theatres, Inc. v. DOT, 118 Wis. 2d 730, 747, 349 N.W.2d 661 (1984). We defer to the trial court's properly exercised discretion because it "has observed the quality of the services rendered and has access to the file in the case to see all of the work which has gone into the action from its inception." Tesch v. Tesch, 63 Wis. 2d 320, 335, 217 N.W.2d 647 (1974). "[A]ll that [a reviewing] court need find to sustain a discretionary act is that the trial court examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175 (1982). Moreover, even where a trial court considered improper facts or had a mistaken view of the law, we may affirm if we "can conclude ab initio that facts of record applied to the proper legal standard support the trial court's conclusion." State v. Pittman, 174 Wis. 2d 255, 268-69, 496 N.W.2d 74 (1993).
¶14 We agree with the Kuehns that the trial court erred in considering the hourly rates paid to court- and SPD-appointed attorneys. Because the Kuehns provided "factual and opinion evidence ... that [their attorney]'s billing rate was consistent with the current market rate and [was] therefore presumptively reasonable" for consumer protection litigation work by comparably skilled and experienced attorneys, there was no reason for the court to go outside the record to consider rates paid for other types of legal work. See Crawford County, 238 Wis. 2d 380, ¶17 & n.6. In addition, we note that rates currently paid to publicly appointed counsel are severely restricted by statute and rule, and thus provide little, if any, indication of "`prevailing market rates in the relevant community.'" See id. at 385 (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)).
¶15 We thus conclude that the trial court should not have reduced the Kuehns' requested fees by halving the proposed billing rate. There is nothing in the record to support a conclusion that $200 per hour was an unreasonable rate for the legal work at issue.[8] We agree with Peppertree, however, that the trial court's ultimate goal was to determine a proper amount of attorney fees to award under a standard of reasonableness, as illuminated by statutory and common-law factors applied to the present record. We conclude that, notwithstanding the trial court's unfortunate choice of methodology in the final paragraph of its written decision, the remainder of the court's stated rationale is both supported by the record and justifies its discretionary decision to award only fifty-percent of the fees requested. See Schauer v. DeNeveu Homeowners Ass'n, Inc., 194 Wis. 2d 62, 70-71, 533 N.W.2d 470 (1995) (explaining that an appellate court "will look for reasons to sustain a circuit court's discretionary decision," and will affirm it "even though the circuit court's reasoning may have been erroneous or inadequately expressed").
¶16 The trial court's explanation of its ruling shows that the principal basis for its decision to cut the requested fees in half was not a belief that the requested rate was unreasonable, but the court's determinations that much of the legal work performed was unnecessary and that the litigation resulted in, at best, a modest benefit for the Kuehns. It is not improper for a trial court to make an overall reduction in requested attorney fees for these reasons instead of striking specific hours from those submitted:
If ... a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.

....
There is no precise rule or formula for making these determinations. The ... court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment....
Hensley, 461 U.S. at 436-37 (emphasis added).
¶17 The Kuehns also contend that the trial court erred by ignoring other relevant factors that they claim find support in the record, such as the time and labor required to prosecute their claims, the novelty and difficulty of the case, the nature and length of their attorney's professional relationship with them and the preclusion of other employment due to their attorney's acceptance of this case. We note first that these factors are among those the trial court cited at the beginning of its decision as providing standards which the court "must look to in making this determination." The court was thus aware of the factors the Kuehns point to, and the fact that the court devoted the balance of its written decision to a discussion of other factors it deemed of more significance in this case does not constitute error. A trial court need not comment on all of the factors set forth in WIS. STAT. § 425.308, SCR 1:1.5, or Hensley in every case. See First Wisconsin Nat'l Bank v. Nicolaou, 113 Wis. 2d 524, 538 n.15, 335 N.W.2d 390 (1983) (noting that § 425.308(2) "does not require the trial court to specifically consider each ... factor[] in every case," although it is "advisable" for the court to "expressly examine all relevant factors").
¶18 In addition to allegedly ignoring certain factors they believe are relevant to and supportive of their fee request, the trial court also erred, according to the Kuehns, in relying on the factors that it did. As we have described, the three factors the court deemed most relevant in the present case were: (1) the Kuehns' excessive discovery in light of the court's conclusion that "[m]any of the basic facts, which proved violations of the code, were evident and present from the beginning"; (2) the lack of a "private attorney general" justification for fees in this case because the DATCP had already successfully pursued the same claim prior to the Kuehns' suit; and (3) the Kuehns' limited success in recovering little more by pursuing private litigation than they would have received had they participated in the DATCP consent order. The Kuehns dispute the validity of each of these trial court findings and conclusions.
¶19 The Kuehns argue that there is no evidence to support the trial court's finding that that they over litigated this case. They point out that the trial court made no finding that any particular interrogatory was irrelevant, inappropriate, overbroad, or imposed for an improper purpose. Be that as it may, the trial court had previously granted Peppertree's motion for a protective order relieving it from responding to the Kuehn's fourth and fifth sets of interrogatories or any further discovery requests. In doing so, the court observed that, in it's opinion, the Kuehns' interrogatory requesting information regarding 411 Peppertree employees, in a case that "isn't that complicated," was "outrageous." The court also commented, when ruling on the protective order, that its "impression" was that that "these cases are driven by attorney fees" in that the issues and amount involved could have been tried much more quickly and at less cost. Finally, the trial court noted that the discovery in this case prompted it to revise its standard scheduling order to place an overall limit on the number of interrogatories that a party could serve without obtaining court approval.
¶20 We conclude that the trial court's finding that the Kuehns' attorney devoted an inappropriate amount of time to pursuing overly extensive discovery was both a proper consideration in determining the amount of reasonable attorney fees, and one that finds support in the record.[9]
¶21 The Kuehns next challenge the trial court's focus on the lack of a need in this case for their attorney to assume the role of a "private attorney general." They argue that they should not be penalized for opting to commence a private action rather than accepting the remedy under the DATCP consent order. We conclude, however, that the trial court did not "penalize" the Kuehns for bringing their actionit awarded them all of their requested costs and over $13,700 in attorney's fees. Moreover, we conclude that, given the rationale behind fee-shifting provisions in consumer protection statutes (see footnote 6), the court's consideration of the lack of significant public benefit from the Kuehns' suit was not improper. By the time the Kuehns filed their suit, their interestsand those of the publichad been represented in the DATCP-negotiated consent order. Peppertree agreed in the consent order to cancel the Kuehns' and other purchasers' time-share contracts and to refund money paid less benefits derived, as well as to pay additional civil forfeitures and restitution. Thus, we agree with the trial court that no appreciable additional deterrent to Peppertree (or others) was achieved by the Kuehns' suit.
¶22 Finally, we review the trial court's conclusion that "[t]he standard of result and outcome" could not support an award of $27,460 in attorney's fees. As we have explained, consideration of the amount involved and the degree of success attained are not only proper considerations in a fee determination, see WIS. STAT. § 425.308(2)(c); SCR 20:1.5(a)(4); Hensley, 461 U.S. at 430 n.3; but this factor is "particularly crucial where a plaintiff is deemed `prevailing' even though he succeeded on only some of his claims for relief," id. at 434. To determine whether a prevailing plaintiff's requested attorney fees merit reduction in cases of partial or limited success, a court should consider whether a plaintiff failed to prevail on some claims and whether the plaintiff achieved a level of success that justifies the hours reasonably expended. Id. Where a plaintiff's claim for relief involves a common core of facts, the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" as a whole. Id. at 435. Moreover, "[t]he inquiry does not end with a finding that the plaintiff obtained significant relief. A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440.
¶23 In their amended complaint, the Kuehns asserted eleven causes of action alleging some twenty-plus statutory violations. The Kuehns sought recovery of actual damages and rescission of their contract. The record supports the trial court's conclusion that, had the Kuehns participated in the DATCP restitution program, they would have had their time-share contract rescinded and recovered a good portion of what they had paid under it. The Kuehns ultimate settlement with Peppertree for $10,750 and cancellation of their contract thus represents a relatively modest benefit to them as compared to what their recovery would have been under DATCP consent order.[10] The trial court's conclusion that the Kuehns achieved a very limited degree of success in this litigation is thus not unreasonable, and the court did not erroneously exercise its discretion in giving considerable weight to this factor in awarding less in attorney fees than the amount the Kuehns requested. See, e.g., Pierce v. Norwick, 202 Wis. 2d 587, 597-99, 550 N.W.2d 451 (Ct. App. 1996) (affirming the trial court's reduction of requested attorney fees from $14,806 to $3,875 in a landlord-tenant case where the trial court found that "the amount of attorney fees requested to be extreme and totally out of proportion to the case in general and the trial results in particular").[11]
¶24 In sum, having reviewed the record, we conclude that, notwithstanding the trial court's error in halving the requested billing rate, the overall fifty-percent reduction it ordered in the Kuehns' requested fees was reasonable and supported by the record. Accordingly, the trial court's award of $13,730 in attorney's fees did not constitute an erroneous exercise of discretion and we affirm it.[12]

CONCLUSION
¶25 For the reasons discussed above, we affirm the judgment of the trial court.[13]
By the Court.  Judgment affirmed.
NOTES
[1] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] See Pliss v. Peppertree Resort Villas, Inc., 2003 WI App 102, 264 Wis. 2d 735, 663 N.W.2d 851; and State v. Peppertree Resort Villas, Inc., 2002 WI App 207, 257 Wis. 2d 421, 651 N.W.2d 345.
[3] WISCONSIN STAT. § 425.308, a part of the Wisconsin Consumer Act, provides:

Reasonable attorney fees. (1) If the customer prevails in an action arising from a consumer transaction, the customer shall recover the aggregate amount of costs and expenses determined by the court to have been reasonably incurred on the customer's behalf in connection with the prosecution or defense of such action, together with a reasonable amount for attorney fees.
(2) The award of attorney fees shall be in an amount sufficient to compensate attorneys representing customers in actions arising from consumer transactions. In determining the amount of the fee, the court may consider:
(a) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite properly to conduct the cause;
(b) The customary charges of the bar for similar services;
(c) The amount involved in the controversy and the benefits resulting to the client or clients from the services;
(d) The contingency or the certainty of the compensation;
(e) The character of the employment, whether casual or for an established and constant client; and
(f) The amount of the costs and expenses reasonably advanced by the attorney in the prosecution or defense of the action.
WISCONSIN STAT. § 707.57(1) provides that "[i]f ... any ... person subject to this chapter fails to comply with this chapter or the time-share instrument, any person ... adversely affected by the failure to comply has a claim for appropriate relief, including but not limited to damages, injunctive or declaratory relief, specific performance and rescission." In addition, "[a] person ... entitled to relief ... is also entitled to recover costs, disbursements and reasonable attorney fees."
[4] The twelve factors identified in Hensley were:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases....
Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983).
[5] SUPREME COURT RULE 20:1.5(a) provides:

A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
[6] The supreme court has identified several purposes served by fee-shifting statutes like WIS. STAT. §§ 707.57(1)(b) and 425.308: (1) the recovery of attorney fees removes a disincentive for individuals to bring legal actions to enforce their rights because the amount of pecuniary loss is often small compared with the cost of litigation; (2) an individual who brings such a suit acts as a "private attorney general" enforcing not only his or her individual rights but, in the aggregate, the public's rights as well; (3) such suits have a deterrent effect which strengthens the bargaining power of consumers; and (4) private actions provide a necessary backup to the state's enforcement powers where the sheer number of violations prevent the state from proceeding against all violators. See Shands v. Castrovinci, 115 Wis. 2d 352, 358-59, 340 N.W.2d 506 (1983).
[7] As we have noted, the DATCP conducted the investigation and negotiations for the consent order. An assistant attorney general with the Wisconsin Department of Justice represented the State in court proceedings regarding the consent order. See State v. Peppertree Resort Villas, Inc., 2002 WI App 207, 257 Wis. 2d 421, 651 N.W.2d 345.
[8] The Kuehns provided supporting affidavits from three local attorneys engaged in consumer litigation work who attested to the Kuehns' attorney's experience and the reasonableness of the hourly rate sought. Peppertree countered with only a State Bar of Wisconsin self-report survey showing that the average hourly rate for sole practitioners in Wisconsin in 2001 was $126, with the median rate being $125 and the rate at the 95th percentile being $185.
[9] Both parties devote a significant portion of their briefs to assigning blame to the other for the failure of a more timely settlement of this case. The Kuehns insist that Peppertree refused to participate in settlement discussions and did not make an acceptable offer until three weeks prior to trial. Peppertree, on the other hand, characterizes the Kuehns' settlement offers as "unreasonable" and "inflated," and it notes that the Kuehns rejected the DATCP settlement and its own individual proposal made soon after the Kuehns had retained counsel. The trial court's written decision, however, does not cite the failure to settle earlier as a basis for its conclusion that the case was "over litigated." Rather, the court points to the Kuehns' use or abuse of the discovery process.
[10] Under the DATCP consent order, Peppertree would have been obligated to cancel the Kuehns' contract and return to them "all money paid to Peppertree less the value of any benefits [they] may have enjoyed under the contract." The Kuehns estimated at the time that they had paid Peppertree some $8,000 in principal and interest and $1,800 in maintenance fees. (In their amended complaint, the Kuehns allege that they paid a total of $11,000 "pursuant to the transaction involving" Peppertree.) The Kuehns also estimated their usage value at $400 and disclosed that they had sold their time-share for $1,500. They recovered $10,750 as damages in this action. The net benefit of this litigation (the amount the Kuehns recovered over and above what was available to them via the DATCP consent order) was thus considerably less than $10,750. We agree with Peppertree that the Kuehns' net benefit from pursuing individual litigation likely did not exceed, at best, several thousand dollars.
[11] The Kuehns also argue that their individual suit benefited them in that they were able to secure placement by Peppertree on a "do not call" list, as well as obtaining Peppertree's agreement to request that all adverse credit information arising from the transaction be deleted from the Kuehns' credit reports. It appears, however, that Peppertree had never reported adverse credit information on the Kuehns' based on this transaction. Also, nothing in the record suggests that their placement on a "do not call" list was a "big ticket" item that could not have been obtained in conjunction with the DATCP settlement or by an independent request to Peppertree following that settlement.
[12] The Kuehns contend that the trial court also erred by not considering their attorney's supplemental affidavit and request for additional fees ($1,280.00) for replying to Peppertree's objection to the initial fee request. They point out that fees may be awarded for time expended in pursuing an award of attorney fees. See Chmill v. Friendly Ford-Mercury, 154 Wis. 2d 407, 415, 453 N.W.2d 197 (Ct. App. 1990). We conclude, however, that the Kuehns are not entitled to relief from the appealed judgment on account of their supplemental request for fees. First, on the issue of the reasonableness of the attorney's fees initially requested, the Kuehns did not "significantly prevail," in that their requested fees were reduced by fifty percent, a reduction that we affirm. Second, we note that the initial fee request included 7.8 hours of attorney time for the preparation and submission of the fee request. Thus, the award we affirm includes $780 in fees for litigating the fee award, an amount we deem reasonable given the outcome on the issue.
[13] We note that as this decision was being prepared for release, the supreme court decided Kolupar v. Wilde Pontiac Cadillac, Inc., 2004 WI 112, No. 02-1915. We have reviewed Kolupar and conclude that our disposition in this appeal is consistent with both the analysis and the result in Kolupar.