COURT OF APPEALS
DECISION
DATED AND FILED

May 6, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP358-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. 2023CM1483

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

    PLAINTIFF-APPELLANT,

V.

BERNABE GONZALEZ,

    DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: ANDERSON M. GANSNER, Judge. *Reversed and cause remanded for further proceedings.*

¶1 WHITE, C.J.[1] The State appeals from the order of the circuit court dismissing the State's criminal complaint against Bernabe Gonzalez for going

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(f) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

armed with a dangerous weapon while under the influence of an intoxicant contrary to WIS. STAT. § 941.20(1)(b). The court found that § 941.20(1)(b) was unconstitutional as applied to Gonzalez. The State argues that the court erred in granting Gonzalez's motion to dismiss because § 941.20(1)(b) is constitutional. We agree with the State and, for the following reasons, we reverse and remand for further proceedings.

## BACKGROUND[2]

¶2 On February 11, 2023, Gonzalez was pulled over by a Milwaukee County Sheriff's Deputy for running a red light and almost hitting a law enforcement vehicle. While the deputy was speaking with Gonzalez, he smelled alcohol and noticed that Gonzalez's eyes were red and glassy. Gonzalez subsequently admitted to having two drinks at a party. Upon taking field sobriety tests, the deputy observed multiple clues for each test indicating that Gonzalez was intoxicated. Gonzalez also provided a preliminary breath test which showed a result of .104 g/100mL of ethanol in his blood. Gonzalez was then arrested for operating a vehicle while intoxicated, as a first offense. During the post-arrest inventory search of Gonzalez's vehicle, the deputy found "a loaded black Smith and Wesson 9mm handgun in the driver's side door pocket," for which Gonzalez had a concealed carry weapons permit.

¶3 The State charged Gonzalez with the misdemeanor offense, going armed with a dangerous weapon while under the influence of an intoxicant

---

[2] We note that the facts surrounding Gonzalez's arrest are undisputed and taken from the criminal complaint which Gonzalez adopted for his motion to dismiss.

contrary to WIS. STAT. § 941.20(1)(b).[3] Gonzalez filed a motion to dismiss arguing that *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) rendered § 941.20(1)(b) unconstitutional as applied to him. The State responded, relying solely on *State v. Christen*, 2021 WI 39, 396 Wis. 2d 705, 958 N.W.2d 746—which was decided under the process that the United States Supreme Court had rejected in *Bruen*. *See id.*, 597 U.S. at 22-24. Gonzalez replied, and a few days before the hearing, the State filed a letter which the court construed as a sur-reply. In its sur-reply, the State emphasized the length of time Wisconsin has had a prohibition on intoxicated firearm possession and how other, more recent firearm laws were found constitutional.

¶4    At the hearing on the motion, Gonzalez initially objected to the circuit court's consideration of the State's sur-reply, but withheld his argument after the court informed him that its consideration of the sur-reply would not alter its decision. The court went on to critique the quality of the State's briefing and question "how much work [the court] should do for the State when evaluating this motion" before stating that it independently researched a number of historical laws. The court then applied the *Bruen* test to the results of its research and went through the State's arguments before finding WIS. STAT. § 941.20(1)(b) unconstitutional as applied to Gonzalez. The court thus granted Gonzalez's motion to dismiss.

¶5    The State then filed a "motion for reconsideration" pursuant to the civil relief statute WIS. STAT. § 806.07(1)(h) and *Koepsell's Olde Popcorn*

---

[3] Under WIS. STAT. § 941.20(1)(b) "'went armed' means that a firearm must have been on the defendant's person or that a firearm must have been within the defendant's reach." WIS JI—CRIMINAL 1321.

*Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd.*, 2004 WI App 129, 275 Wis. 2d 397, 685 N.W.2d 853. In its brief, the State presented additional persuasive authority and new arguments. In response, Gonzalez moved to strike the motion as untimely and unjustified, and for sanctions against the State.

¶6 At the hearing on the motion for reconsideration, the circuit court declined to strike the motion. The court assumed that WIS. STAT. § 806.07(1)(h) applied to this criminal case and construed the State's argument as "its failure to present this additional authority earlier, or [the court's] supposed unawareness of these authorities, has created extraordinary circumstances in this matter." The court explained that "what the State does now is what I think it probably would admit it should have done months ago, and that's try to provide some actual historical analogues." Nevertheless after considering the State's arguments, the court denied the State's motion for reconsideration.[4]

¶7 The State appeals.

## DISCUSSION

¶8 On appeal the State argues: (1) that Gonzalez did not fall within the class of people protected by the Second Amendment because he operated his vehicle while intoxicated with his gun within arm's reach; (2) that WIS. STAT. § 941.20(1)(b) is constitutional because historical laws establish a history and tradition of regulating the possession of firearms by intoxicated people; and

---

[4] Due to our conclusion reversing the circuit court's underlying order which granted Gonzalez's motion to dismiss, we do not address the parties' arguments regarding the court's order denying the State's motion for reconsideration. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("Typically, an appellate court should decide cases on the narrowest possible grounds.")

(3) that § 941.20(1)(b) is constitutional because it is analogous to modern laws restricting firearm ownership of felons and the mentally ill.

¶9    As threshold issues, Gonzalez argues that the State forfeited "every argument" it makes on appeal and that none of the historical laws the State relies on should be considered because the circuit court first uncovered them through its independent research which impermissibly assumed the State's burden. We take each argument in turn starting with forfeiture before addressing the substantive issues.

¶10    "Forfeiture is the failure to make the timely assertion of a right." *State v. Counihan*, 2020 WI 12, ¶25, 390 Wis. 2d 172, 938 N.W.2d 530. "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." *State v. Huebner*, 2000 WI 59, ¶10, 235 Wis. 2d 486, 611 N.W.2d 727. One of the benefits of the forfeiture rule is that it "gives the parties and the circuit court notice of an issue and a fair opportunity to address the objection." *Counihan*, 390 Wis. 2d 172, ¶27. Nevertheless, "[t]he forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *Id.* "An exception to [the forfeiture] rule is usually made only when the new issue raised is a question of law, the parties have thoroughly briefed the issue, and there are no disputed issues of fact regarding the new issue." *State v. Bodoh*, 226 Wis. 2d 718, 737, 595 N.W.2d 330 (1999).

¶11    We decline to apply the forfeiture rule to the State's arguments here. The constitutionality of a statute is a legal question, *State v. VanderGalien*, 2024

WI App 4, ¶19, 410 Wis. 2d 517, 2 N.W.3d 774; there are no undisputed facts; and the parties fully briefed the issues. *See **Bodoh***, 226 Wis. 2d at 737. Furthermore, the circuit court considered the State's arguments. Thus, there is no risk of "blindsiding" the circuit court with a reversal based on a theory that did not originate in its forum. *See **State v. Rogers***, 196 Wis. 2d 817, 827, 539 N.W.2d 897 (Ct. App. 1995).[5]

¶12    Gonzalez also argues that we should disregard many of the historical laws that the State relies on as analogues because the circuit court first uncovered them through its own independent research which impermissibly assumed the State's burden and developed the State's arguments for it.

¶13    Gonzalez is correct regarding how "[t]he opinions of our appellate courts are replete with precatory admonitions that trial judges must not function as partisans or advocates … or betray bias or prejudice[.]" ***State v. Carprue***, 2004 WI 111, ¶44, 274 Wis. 2d 656, 683 N.W.2d 31. However, conducting independent research does not in itself show bias or render the court an advocate for one party. "A competent judge is not so naive to believe that briefs will always summarize the relevant facts and the applicable law in an accurate fashion. A competent judge uses the briefs as a starting line and not the finish line for his or her own independent research." ***Camacho v. Trimble Irrevocable Tr.***, 2008 WI App 112, ¶7, 313 Wis. 2d 272, 756 N.W.2d 596. Under ***Bruen***, historical laws are

---

[5] We caution that our consideration of the State's arguments here should not be interpreted as an endorsement of how it litigated this case before the circuit court. Attorneys are expected to diligently prepare for hearings and should not rely on motions for reconsideration as vehicles to raise new arguments that could have been presented during the court's consideration of the underlying motion. *See **State v. Huebner***, 2000 WI 59, ¶12, 235 Wis. 2d 486, 611 N.W.2d 727; ***Lynch v. Crossroads Counseling Ctr., Inc.***, 2004 WI App 114, ¶23, 275 Wis. 2d 171, 684 N.W.2d 141.

relevant to the constitutionality of modern firearm regulations. *See id.*, 597 U.S. at 28-29. "Selecting the correct statement of the law to apply to the facts is not showing preference for one party over the other; rather, it is the court fulfilling its duty." *Camacho*, 313 Wis. 2d 272, ¶10.

¶14 Gonzalez also points to a statement by the circuit court questioning "how much work [the court] should do for the State when evaluating this motion" to support that the court assumed the State's burden. However, in context it is clear that the court was criticizing the lack of legal research done by the State and was not explaining that it would assume the State's burden. The court researched potentially relevant historical laws regulating firearms, explained to the parties what it had uncovered, and found that there were no historical laws analogous to WIS. STAT. § 941.20(1)(b)—which supported Gonzalez's position. The court was under no obligation to simply accept Gonzalez's legal research as complete without doing some of its own simply because the State failed to brief the motion as thoroughly as it could have.[6] Thus, we conclude that the court committed no error in conducting its own legal research.

¶15 Turning to the merits, the State argues that WIS. STAT. § 941.20(1)(b) is constitutional as applied to Gonzalez under *Bruen*.

¶16 We review the constitutionality of a statute independently. *VanderGalien*, 410 Wis. 2d 517, ¶19. "[I]n an as-applied challenge, we assess the merits of the challenge by considering the facts of the particular case in front of us

---

[6] Similarly, in *Bruen* the Supreme Court noted that it was not obligated to independently search for historical support to sustain New York's statutory scheme; however, it nevertheless provided "a short review of the public discourse surrounding Reconstruction[.]" *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 60 (2022).

not hypothetical facts in other situations." *Christen*, 396 Wis. 2d 705, ¶32 (citation omitted).

¶17 Recently, how courts analyze the constitutionality of firearm regulations under the Second Amendment has changed in the wake of the Supreme Court's *Bruen* decision. The Court rejected the two-part approach that was previously used and clarified that the proper test is the following:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 17 (citation omitted).

¶18 The Court explained that deciding whether a statute complies with the Second Amendment involves "reasoning by analogy" to "determin[e] whether a historical regulation is a proper analogue for a distinctly modern firearm regulation[.]" *Id.* at 28-29. This "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin" or a "dead ringer." *Id.* at 30; *United States v. Rahimi*, 602 U.S. 680, 692 (2024).[7] "[T]he appropriate analysis involves considering whether the

---

[7] We note that *United States v. Rahimi*, 602 U.S. 680 (2024) was decided prior to the completion of briefing for this case. Gonzalez addressed *Rahimi*'s relevance to this case in a June 25, 2024 letter submitted to this court pursuant to WIS. STAT. RULE 809.19(10). The State addressed *Rahimi* in its reply brief.

challenged regulation is consistent with the principles that underpin [the Nation's] regulatory tradition." *Rahimi*, 602 U.S. at 692.

¶19     The State argues that Gonzalez does not fall within the class of people protected by the Second Amendment because he operated his vehicle while intoxicated with his gun within arm's reach.  In response, Gonzalez argues that the State's argument is undeveloped.  We agree with Gonzalez.

¶20     The State relies on *Heller*'s discussion of "the people" protected under the Second Amendment and the Court's characterization of the Second Amendment right as "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller*, 554 U.S. 570, 580, 635 (2008); *see also* *United States v. Verdugo-Urquidez*, 494 U.S. 259, 265 (1990) (explaining that "the people" referred to in the Second Amendment is a term of art).  The State also relies on *United States v. Grinage*, No. SA-21-CR-00399-JKP, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022) for support.[8]   In *Grinage* the federal district court held that felons are not part of "the people" by applying the *Bruen* test to the question of whether excluding felons from the Second Amendment "is firmly rooted in this Nation's historical tradition, at common law[.]" *Grinage*, No. SA-21-CR-00399-JKP at *7.

¶21     Here, unlike the government in *Grinage*, the State makes no attempt to establish that excluding people like Gonzalez—who committed crimes akin to

---

[8] The State further cites to *Carpio-Leon*, a pre-*Bruen* 4th Circuit case, which held that "the Second Amendment does not extend to provide protection to illegal aliens, because illegal aliens are not law-abiding members of the political community and aliens who have entered the United States unlawfully have no more rights under the Second Amendment than do aliens outside of the United States seeking admittance." *United States v. Carpio-Leon*, 701 F.3d 974, 975 (4th Cir. 2012).

operating a vehicle while intoxicated—from the protection of the Second Amendment was rooted in this Nation's history and tradition as required by *Bruen*. *See id.*, 597 U.S. at 17, 19-20 (confirming that *Heller* supports an approach that "beg[ins] with a 'textual analysis' focused on the 'normal and ordinary' meaning of the Second Amendment's language" that is then "confirmed by the historical background of the Second Amendment." (citation omitted)).

¶22 Furthermore, the State's reliance on the federal district court's analysis in *Grinage* is not sufficient to support its argument. *Grinage* only held that our history and tradition supports excluding convicted felons from the protections of the Second Amendment. It is one thing for a convicted felon to fall out of the class of people protected by the Second Amendment. It is an entirely more expansive proposition to conclude that a person in the process of committing a traffic violation is automatically excluded from the protection of the Second Amendment. The State fails to adequately develop such an argument; therefore, we do not discuss it further. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶23 The State also argues that WIS. STAT. § 941.20(1)(b) is consistent with our history and tradition of prohibiting the possession of firearms by intoxicated people. The State relies on a number of historical regulations involving firearms and alcohol from different time periods to establish this tradition.

¶24 For the 17th century, the State points to a Virginia law which prohibited "shoot[ing] any gunns at drinkeing" except at marriages and funerals. Acts of Mar. 10, 1655–56, Act 12, *reprinted in* 1 THE STATUTES AT LARGE; BEING A COLLECTION OF ALL THE LAWS OF VIRGINIA, FROM THE FIRST SESSION

10

OF THE LEGISLATURE IN THE YEAR 1619, at 401–02 (William Waller Hening ed., New York, R. & W. & G. Bartow 1823).  The stated goal of this regulation was to curb the misuse of firearms while intoxicated; specifically, to allow for the sound of gunshots to be used an alarm and to preserve gunpowder.

¶25    For the 18th century, the State cites to a New York law which sought to prevent "great Damages" and "many Mischiefs" by people "intoxicated with Liquor" by prohibiting citizens from firing guns during New Year's celebrations. Act of Feb. 16, 1771, ch. 1501, *reprinted in* 5 THE COLONIAL LAWS OF NEW YORK FROM THE YEAR 1664 TO THE REVOLUTION 244, 244–245 (Albany, James B. Lyon 1894).

¶26    The State also cites to laws from Pennsylvania, Connecticut, and Rhode Island which penalized the possession of firearms by intoxicated militia members.  *See* Act of March 17, 1777, arts. 9-10, *reprinted in* 2 MILITARY OBLIGATION: THE AMERICAN TRADITION, pt. 11, at 38 (Arthur Vollmer ed., 1947) (penalizing under Pennsylvania law "any officer or private man found drunk when under arms[.]"); Act of Mar. 20, 1780, ch. 902, § 45, *reprinted in* 2 MILITARY OBLIGATION, pt. 11, at 97 (stating that under Pennsylvania law "if any non-commissioned officer or private shall … be found drunk … he shall be disarmed[.]); Act of May 2, 1775, art. 19, *reprinted in* 2 MILITARY OBLIGATION, pt. 2, at 188 (penalizing, under Connecticut law, militia members "found drunk[.]"); Act of January 1844, § 1, *reprinted in* PUBLIC LAWS OF THE STATE OF RHODE-ISLAND AND PROVIDENCE PLANTATIONS, at 503, (Providence, Knowles & Vose 1844) (stating a Rhode Island law that excluded "common drunkards" from serving in the militia).

¶27    For the 19th and early 20th century, the State relies on laws prohibiting the possession of firearms while under the influence of alcohol, including Wisconsin's first incarnation of a law like WIS. STAT. § 941.20(1)(b). *See* 1883 Wis. Laws, ch. 329, § 3 ("It shall be unlawful for any person in a state of intoxication, to go armed with any pistol or revolver."); 1867 Kan. Laws, ch. 12, § 1 ("[A]ny person under the influence of intoxicating drink, … carrying on his person a pistol, bowie-knife, dirk, or other deadly weapon, shall be subject to arrest upon charge of misdemeanor[.]"); MO. REV. STAT. ch. 24, § 1274 (1879) ("If any person … shall have or carry any such weapon upon or about his person when intoxicated or under the influence of intoxicating drinks … he shall, upon conviction, be punished[.]");OKLA. STAT. art. 47, § 4 (1890) ("[A]ny public officer be found carrying such arms while under the influence of intoxicating drinks, he shall be deemed guilty of a violation of this article as though he were a private person."); H.B. 62, § 1, 10th Leg., Reg. Sess. (Idaho 1909) (prohibiting any intoxicated person from having or carrying "any dirk, dirk knife, bowie knife, dagger, slung shot, pistol, revolver, gun or any other deadly or dangerous weapon[.]")

¶28    Gonzalez argues that the historical laws the State relies on are not similar enough to WIS. STAT. § 941.20(1)(b) to establish a relevant regulatory tradition. Specifically, he notes that Virginia's and New York's laws only prohibited firing weapons, not possessing them, and that New York's law was limited in time. Gonzalez also takes issue with the laws regulating militia members and argues that regulations applicable only to on-duty militia members are not relevant to the constitutionality of § 941.20(1)(b) which is applicable to the general public.

¶29 "[T]he Second Amendment permits more than just those regulations identical to ones that could be found in 1791." *Rahimi*, 602 U.S. at 691-92. The State is not required to produce historical laws that are "a 'dead ringer' or a 'historical twin.'" *Id.* at 692 (citation omitted). "A court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (citation omitted; alteration in original). For example, in *Rahimi* the government failed to identify a historical law "that specifically disarmed domestic abusers, but it did not need to do so." *Id.* at 704 (Sotomayor, J., concurring) (citation omitted). The Supreme Court concluded that it was sufficient for the government to show that the law at issue was consistent with the principles—demonstrated by historical surety and "going armed" laws— of restricting firearm use to mitigate threats of physical violence which underpin our regulatory tradition. *Id.* at 700, 704

¶30 We agree that many of the laws the State cites to are not identical to § 941.20(1)(b); however, these laws are relevantly similar and demonstrate a historical tradition of restricting firearm use and possession to solve the problems caused by intoxicated firearm use. Gonzalez also contends that the historical laws cannot support prohibiting an intoxicated person from having firearms within arm's reach because only MO. REV. STAT. ch. 24, § 1274 (1879) and 1909 Id. Laws, no. 62, § 1 could encompass that meaning. However, having a firearm within arm's reach is similar to physically possessing one, especially under the circumstances of this case. Gonzalez did not merely happen to be near a firearm while intoxicated, but rather he was in his vehicle with his firearm within arm's reach as he drove around while intoxicated. Given Gonzalez's mobility and the

13

accessibility of his loaded firearm we fail to see how historical laws regarding the physical possession of firearms are as inapposite as Gonzalez argues.

¶31 Finally, Gonzalez argues that the 19th and early 20th century laws prohibiting possession of firearms by intoxicated people are too distant in time from the founding of the United States to be instructive here. However, while the Supreme Court in *Bruen* noted that the value of 19th and 20th century materials was limited, it still recognized that they can be used to confirm what is already thought to be established. *Id.*, 597 U.S. at 36-37. Furthermore, the Court also "acknowledge[d] that there is an ongoing scholarly debate on whether courts should primarily rely on the prevailing understanding of an individual right when the Fourteenth Amendment was ratified in 1868 when defining its scope (as well as the scope of the right against the Federal Government)." *Id.* at 37-38. The Court chose to not weigh in on this debate, leaving the question of how much courts should rely on mid-19th century material an open one. *Id.*

¶32 Here, the State cited to laws from 1867, 1879, 1883, 1890, and 1909 that prohibit the possession of firearms while under the influence of alcohol. *See* 1867 Kan. Laws, ch. 12, § 1; MO. REV. STAT. ch. 24, § 1274 (1879); 1883 Wis. Laws, ch. 329, § 3; OKLA. STAT. art. 47, § 4 (1890); H.B. 62, § 1, 10th Leg., Reg. Sess. (Idaho 1909). These laws support that it was understood from the mid-19th century to the early 20th century that the Second Amendment did not prevent

criminalizing intoxicated possession of firearms.[9] Additionally, they confirm what the State's earlier historical laws suggest, that it is permissible under the Second Amendment to regulate firearms to solve problems caused by intoxicated firearm use. *See also **Christen***, 396 Wis. 2d 705, ¶81 (Hagedorn, J., concurring) (concluding "the founding-era historical record suggests, and the reconstruction-era evidence confirms, that one way the government could curtail the reckless handling of firearms was by criminalizing armed intoxication").

¶33 Ultimately, WIS. STAT. § 941.20(1)(b) is relevantly similar to historical laws because these laws all address a comparable problem—preventing firearm misuse by intoxicated people—by regulating firearm use and possession. Thus, the State has sufficiently established that § 941.20(1)(b) is consistent with

---

[9] The State also points to ***State v. Shelby***, 2 S.W. 468 (1886), in which the supreme court of Missouri considered whether MO. REV. STAT. ch. 24, § 1274 (1883), prohibiting possession of a deadly weapon while intoxicated, was constitutional under the Second Amendment. The court concluded that "no good reason is seen why the legislature may not [regulate] with reference to the condition of the person who carries such weapons…. The statute is designed to promote personal security, and to check and put down lawlessness, and is thus in perfect harmony with the constitution." ***Id.*** at 469.

our national history and tradition of regulating firearms.[10]  Therefore, we conclude that § 941.20(1)(b) is constitutional as applied to Gonzalez.[11]  *See also* ***Christen***, 396 Wis. 2d 705, ¶81 (Hagedorn, J., concurring) (concluding based solely on historical evidence that "laws forbidding armed intoxication do not violate the Second Amendment right to keep and bear arms").

## CONCLUSION

¶34    We conclude WIS. STAT. § 941.20(1)(b) is constitutional as applied to Gonzalez under ***Bruen***.  Accordingly, we reverse and remand for further proceedings.

---

[10] We note that we reach a similar conclusion regarding this Nation's history and tradition to that reached by the Fifth Circuit in *United States v. Connelly*, 117 F.4th 269, 281-82 (5th Cir. 2024).  In ***Connelly***, the Fifth Circuit considered whether 18 U.S.C. § 922(g)(3)—which prohibited anyone who is an "unlawful user of or addicted to any controlled substance" from owning firearms—was constitutional.  ***Connelly***, 117 F.4th at 272, 279-282.  The government argued that historical laws regulating the use and possession of firearms while intoxicated from alcohol are analogous to § 922(g)(3).  ***Connelly***, 117 F.4th at 279, 282.  For support, the government relied on many of the same historical laws that the State relies on before this court.  ***Connelly***, 117 F.4th at 280-281.  The Fifth Circuit concluded that "[t]aken together, the statutes provide support for banning the carry of firearms while actively intoxicated."  ***Connelly***, 117 F.4th at 281 (emphasis omitted).  Ultimately, it held that although § 922(g)(3) encompassed more than just prohibiting intoxicated firearm possession, the statute was facially constitutional because "our history and tradition of firearms regulation show that there are indeed some sets of circumstances where § 922(g)(3) would be valid, such as banning presently intoxicated persons from carrying weapons."  ***Connelly***, 117 F.4th at 282; *see also* ***Antonyuk v. James***, 120 F.4th 941, 1029-30 (2d Cir. 2024) (concluding that "historical analogues establish a consistent and representative tradition of regulating access to firearms by people with impaired self-control or judgment, specifically those who are intoxicated").

[11] Due to our conclusion that WIS. STAT. § 941.20(1)(b) is constitutional because it is consistent with our history and tradition of regulating firearms to prevent firearm misuse by intoxicated people, we do not address the State's alternate argument that § 941.20(1)(b) is constitutional because it is analogous to modern laws restricting gun ownership of felons and the mentally ill.  *See* ***Maryland Arms***, 326 Wis. 2d 300, ¶48 ("Typically, an appellate court should decide cases on the narrowest possible grounds.")

*By the Court.*—Order reversed and cause remanded for further proceedings.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.